**DEMETREE v. UNITED STATES.**

No. 14488.

United States Court of Appeals
Fifth Circuit.

Nov. 24, 1953.

13. 32 CFR (Revised, 1951) § 1624.2(c).

Stafford Caldwell, Jacksonville, Fla., Harry G. Taylor and Ernest E. Roberts, Miami, Fla., for appellant.

James L. Guilmartin, U. S. Atty., Miami, Fla., Mark Hulsey, Jr., Asst. U. S. Atty., Jacksonville, Fla., H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, David L. Luce, Joseph M. Howard, Sp. Assts. to Atty. Gen., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

### HUTCHESON, Chief Judge.

Tried upon an indictment in two counts charging him with willfully attempting to defeat and evade income taxes for the calendar years 1945 and 1946, appellant was acquitted on count two and convicted on count one. Appealing from the judgment and sentence on that count, he is here insisting that the trial and conviction were attended with prejudicial errors requiring a reversal of the judgment.

While the specific errors claimed are many in number, they fall roughly into six groups.[1]

This is another of the growing list of criminal cases in which the government, having no or little direct evidence of defendant's guilt to offer and endeavoring to prove it by circumstantial evidence, attempts to do so by what may be called the net worth and expenditures method of proof. In this attempt, unless the greatest care is taken by the district judge to prevent it, there is danger of the case being tried on a theory which, keeping to the ear the promise that a defendant is presumed innocent until his guilt is established beyond a reasonable doubt, breaks it to the hope by allowing a series of theoretical estimates and computations as to defendant's income to take the place of proof of it.

Sometimes conclusions from those computations and estimates are allowed to invade the province of the jury and furnish the basis for a conviction not upon evidence of facts but upon speculation and theorizing by the government's witnesses as to what the facts really are.

Sometimes, without adhering to the essentials of the method, that the net worth at the beginning as well as the end of the period be shown, the proof comes in and the case is submitted with a complete gap in the proof as to the beginning of the period.

1. The first group deals with claimed error in not granting the motion of the defendant at the close of the government's case for a directed verdict of not guilty. Under this heading appellant argues that the verdict on count one is contrary to the law and the evidence and not supported by the evidence. It is to be noted that the motion for judgment, made at the conclusion of the government's case, was not renewed at the end of the case.

The second group deals with claimed error in denying defendant's motion for a bill of particulars.

The third group deals with many errors of commission claimed to have occurred in the giving of the charge to the jury. It will be noted here that there was no exception taken to the general charge and at the conclusion of it the defendant's counsel especially stated that they had no exception except to the refusal of requested charges. This being so, appellant is under a heavy burden to show that the errors complained of in the general charge were so grievous procedurally as to practically amount to a denial of due process.

The fourth group deals with the action of the court in discussing with, and instructing the jury as to, the question of punishment in the event of conviction, thus bringing pressure upon the jurors to convict by promising leniency in the event of conviction.

The fifth group deals with errors in the admission and exclusion of evidence.

The sixth group deals with claimed errors of the court in refusing to give instructions to the jury.

This kind of latitudinous allowance of the admission and use of conclusions as evidence and the submission of the case to the jury without a scrupulous adherence to the theory, has resulted in a tendency to accept, if not in the complete acceptance of, the idea that in a case tried by this method, ordinary rules of proof may be relaxed if not disregarded. Further and more prejudicial to a defendant, there has grown up a kind of ancillary theory that the government, by introducing proof of deposits, expenditures, etc., having put up what it calls a *prima facie* case, the defendant finds himself jockeyed out of the position the law affords him, of insisting that the government establish his guilt by legal and credible evidence beyond a reasonable doubt. This is accomplished by requiring him to prove himself innocent by assuming the burden of overcoming the prejudicial effect of the mass of exhibits, estimates, conjectures, and conclusions which the government has been allowed to get into the record, upon the apparent theory that it is up to the defendant to explain all of it away as part of his burden to prove his innocence.

■ This court and other courts have, in many cases,[2] pointed out the dangers attending trials conducted in this way. Some of them have at times seemed to be more concerned with easing the difficulties attending the proof of guilt by this method than with preserving unimpaired the constitutional rights of a defendant, the fundamental safeguards and guarantees of his liberty. Most of the courts, however, confronted with the situation which this kind of case presents, have withstood all attacks upon, and have held fast to, constitutional principles, including the fundamental premise upon which criminal trials proceed, that the defendant is presumed innocent until his guilt is established by legal and admissible evidence beyond a reasonable doubt.

Because of the dangers and difficulties inherent in this kind of criminal proceeding, we have scrutinized the record with the greatest care to determine whether appellant's claim, that no case was proved and no verdict should have been returned against him, is correct, and we have done this notwithstanding the fact that defendant did not renew his motion for a directed verdict at the conclusion of the whole case.

■ Unfortunately for the defendant's position that, because of the method of proof employed, legal evidence is lacking upon which to find him guilty, his willingness to cooperate with the government agents in their many conferences and discussions with him on the theory, as he claims, that he was of the opinion that, instead of laying a predicate to judge him out of his own mouth, he and they were trying to correctly ascertain and straighten his tax liability out, stands strongly in his way. For it has placed him in the position of making many statements to which the government can and does point as admissions in support of their theory, with the result that, everything considered, it may not be said as matter of law that the record is wholly without evidence to support the verdict.

■ Of the next error assigned, the denial of his motion for bill of particulars, it is sufficient to say that we find this claim deprived of substance by the fact that the government in advance made an oral statement of its case, sufficiently apprising the defendant of the particulars upon which it would rely, and further that we find no showing made that, because of the want of the bill of particulars, defendant was prevented from making his defenses against the charges. Indeed, the evidence clearly shows that, as a result of all of the interviews and discussions he had with the

2. Bryan v. United States, 5 Cir., 175 F.2d 223; United States v. Fenwick, 7 Cir., 177 F.2d 488; United States v. Caserta, 3 Cir., 199 F.2d 905; Pollock v. United States, 5 Cir., 202 F.2d 281; Montgomery v. United States, 5 Cir., 203 F.2d 887 at page 892. Cf. U. S. v. Johnson, 319 U. S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546.

agents and of the oral statement made by the government's counsel, he knew their theories and that of the government's counsel as well as they did.

■ As to the third group of claimed errors, we are in agreement with the defendant that some portions of the general charge now complained of, including particularly some of the judge's comments upon the evidence, tended to confuse more than to enlighten the jury as to the state of the proof, complicated as the record was by the way and manner in which conclusions, estimates, and computations had come in as evidence, and that, while they appear to have been well intentioned, they were far from helpful. We are yet constrained to hold that, since the defendant made no objection to the charge and since the matters complained of do not amount to a denial of justice, appellant may not now put the judge in error for such aberrations from accepted practices as occurred in his summing up.

■ The error dealt with in the fourth group, however, the court's colloquies with, and instructions to, the jury in connection with the question of punishment, constituted reversible error. To demonstrate that this is so requires no more than a reference to, and some quotation from, the record.[3]

In view of what occurred, we think it unnecessary to cite authorities. We think, though, that Lovely v. United

---

3. "* * * And at 3:30 o'clock in the afternoon, Thursday, Feb. 19th, 1953, the jury retired to consider its verdict.

"The Court: 'All right, take a recess, then, for ten minutes, and I will proceed with the next case.'"

"* * * And at 5:40 o'clock in the afternoon, Thursday, Feb. 19th, 1953, the jury returned to the Court room, and the following proceedings were had:

"The Court: 'Mr. Foreman, have you agreed upon a verdict in this case?'

"Foreman Palmer: 'Your Honor, we have been unable to agree on an unanimous verdict.'

*     *     *     *     *

"Foreman Palmer: 'May I make further comments? It is my opinion and the opinion of several others that we are not going to be able to reach a unanimous agreement.'

"The Court: 'Well, I don't think we can give up that easily.'

*     *     *     *     *

"Foreman Palmer: 'I would like to ask for further instructions, then, on just what the Court means by, what we could consider reasonable doubt—excuse me just a minute again, Your Honor. We understand that it was circumstantial evidence, and that the man would not come out and say 'I am guilty'; he has already said he is not guilty now.'

"The Court: 'Do you want me to define a reasonable doubt and circumstantial evidence?'

"Foreman Palmer: 'Yes sir.'"

Thereafter the court defined "circumstantial evidence" and "reasonable doubt", and followed this up with a statement that the jury ought to try to reach a verdict, including in his statement that some jury has to decide the case, cases are expensive to try, and it is important that they try to agree.

The jury was excused until 7:30 P.M., they retired to further deliberate on the verdict, and at 8:30 P.M., they returned to the court room to ask for further instructions, when the following colloquy occurred:

"Foreman Palmer: '* * * I have been requested to ask you if you can—if it's reasonable for you to tell us, in case of a conviction, what the punishment would be, and if not, whether you could enlighten several members as to just what your attitude would be regarding it.'

"The Court: 'I will be very happy to do that. I think I will put it this way, I have told you that it was the Court's responsibility to determine what punishment should be inflicted, and I feel like the jury should be willing to trust the Court to exercise discretion in that respect, without attempting to seek that information. And, to tell the truth about it, I don't know what the punishment would be. In the event there should be a verdict in the case, of guilty, it would be necessary for me to give that consideration. Up to this time I have not been forced to consider it. But, that is a matter that the jury should not be concerned with. It should not influence your decision in this case.'

*     *     *     *     *

"The Court: 'I think you better discuss the case further. You have heard the evidence in the case for three days. There have been a lot of matters discussed during the course of the trial, and

States, 4 Cir., 169 F.2d 386, is directly in point and that none of the cases relied on by appellee hold to the contrary.

Our conclusion that the judgment should be reversed because of the error of the judge in inducing the verdict, notwithstanding the jury's stated inability to agree, by stating to them that the defendant could be put upon probation or fined, and his ready assurance, in answer to the jury's question as to his own attitude, in effect that he would be lenient, makes it unnecessary for us to consider in detail the grounds of error assigned in groups five and six.

In view, however, of another trial, we think we should say as to those assigned in group five, the admission and exclusion of evidence, that it is not likely that the matters dealt with in those claims of error will come up in the same way again, and it will serve no purpose for us to try now to lay down with precision what the judge's ruling should be with respect to those matters on another trial. It is sufficient to say that, speaking generally, the evidence admitted was admissible under proper safeguards, that the exclusionary rule applied was in principle right, and that it does not appear on the present record to have been unduly restrictive.

As to the claimed errors falling in group six, the refusal of the judge to give instructions which were properly requested and the refusal of which was properly excepted to by the defendant, we are of the clear opinion that of the charges, whose refusal is complained of, only the refusal of requested instruction No. 10 could possibly be claimed as erroneous, and if this was error, it was so because in it the defendant presented clearly a theory which he was entitled to have given in charge, and the court in the general charge did not fully and clearly present this view. This theory, as he undertook to present it in charge No. 10, was that the defendant could not be convicted upon the net worth and expenditures method unless the conditions of that method as given them in charge by the judge were substantially complied with and that if a consideration of the evidence as a whole, the government's evidence in support of its theory and the defendant's evidence in rebuttal thereof, raised in the minds of the jury a reasonable doubt as to the substantial accuracy of the computations, and therefore of defendant's guilt, it would be their duty to give defendant the benefit of the doubt and acquit him.

Without, therefore, determining that the refusal of the requested charge in the precise form requested was error, we think it appropriate, in view of the nature of much of what was offered as evidence, consisting, as it did, of computations and conclusions of the government's witnesses, some of which were stated not as such but as based upon knowledge and conviction, to say that on another trial it will be highly important that the jury be given in charge an instruction which will clearly and correctly

---

I don't feel that it is so that you cannot finally reach a verdict, if you were to discuss the case with a proper attitude and proper frame of mind.'

"Foreman Palmer: 'We are trying. I assure you of that.'

"The Court: 'I am sure you are, and I think you should consider the case further. Do you have any other questions?'

"Foreman Palmer: 'Do you have any other questions you want to ask (addressing the jurors)?'

"A Juror: 'The gentleman wants to know if there is any minimum or maximum?'

"The Court: 'There is no mandatory sentence. That is, the Court might place the defendant on probation or might impose a fine or might impose an institutional sentence. I really don't know what the maximum is. I really don't know what the maximum penalty is.'

"Foreman Palmer: 'May we proceed back to the jury room?'

"The Court: 'Yes. I think I can assure you that the maximum penalty would not be imposed. I don't know what it is.' "

The jury then retired at 8:47 P.M. to further deliberate on the verdict, and at 9:35 P.M., returned their verdict.

present the defensive theory sought to be presented in defendant's requested instruction No. 10.

For the reasons stated, the judgment is reversed and the cause is remanded for further and not inconsistent proceedings.