**E. C. LLOYD, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 15207.

United States Court of Appeals
Fifth Circuit.

Sept. 30, 1955.

Rehearing Denied Oct. 28, 1955.

William S. Pritchard, Winston B. Mc-Call, Birmingham, Ala., Pritchard, Mc-Call & Jones, Birmingham, Ala., of counsel, for appellant.

Frank M. Johnson, Jr., U. S. Atty., Leon J. Hopper, Asst. U. S. Atty., for appellee.

Before RIVES, TUTTLE and CAM-ERON, Circuit Judges.

RIVES, Circuit Judge.

Appellant was convicted upon a jury trial under three counts of two separate indictments[1] charging him with the offense of willfully attempting to evade and defeat his federal income tax for the calendar years 1945, 1946 and 1947, by filing false and fraudulent returns in violation of Title 26 U.S.C.A. § 145(b). He was sentenced by the district court to 18 months imprisonment and to pay a $2,500.00 fine.

On a hearing of the defendant's motion for a bill of particulars, the United States Attorney represented to the court and to counsel for the defendant "that the method employed in computing the corrected net income was the specific-

[1] Count 2 of the original indictment mistakenly referred to the year 1945 instead of 1946, and was ordered nol prossed by the court on motion of the United States Attorney. A separate indictment for the year 1946 was consolidated for trial and on appeal with the indictment for 1945 and 1947.

item adjustment method," and thereupon the court ordered the Government "to furnish the defendant with information as to the categories in which the specific item adjustments were made in said computations." The Government then informed the defendant that the items upon which adjustments were made were for 1945, receipts, merchandise purchases, and delivery expenses, and for 1946 and 1947, receipts and merchandise purchases.

The evidence tended to show that, on his bakery books and in his returns for the years involved, appellant overstated the expense of merchandise purchased by approximately $17,350.00, principally by writing five $3,000.00 checks on his bakery account, four of which were drawn on the Commercial National Bank at Anniston, Alabama, and charged on his bakery books as "flour purchases", and one of which, dated July 2, 1946, was drawn on his adopted daughter's account at that bank and shown on the bakery books as a sugar purchase, which checks were supported by no invoices or other records to corroborate appellant's claim that they actually represented payment for merchandise purchases as reflected upon his bakery books, and which actual use for such purpose was somewhat negatived by testimony of a revenue agent, Potter, revealing that on the date each check was drawn a corresponding amount was deposited to the credit of appellant's personal loan account at that same bank; that four other counter checks aggregating $1,650.00 were also drawn by appellant during 1945 and 1946 on the Anniston Cotton Oil Company, and were represented on his bakery books as "miscellaneous merchandise purchases", though the owner of that Company, J. A. Stewart, testified that he gave appellant cash for these checks and that they were not received in payment for any merchandise or services rendered by his Company either to appellant or his bakery establishment; that for the year 1945 the delivery expenses of appellant's bakery were overstated by $1,300.00, proof of which overstatement was made by testimony that three checks drawn by appellant, dated December 7, 1945, one of which was made payable to the Alabama Motor Company and the other two to C. J. Alford, were not issued or received in payment of any delivery expenses, as indicated by the books of the bakery, but were simply cashed by appellant, the witness C. J. Alford testifying that at the time appellant "laughed casually" and said he was "going to the Elks Club" to "play black-jack"; further, that appellant's book-keeper, for about two months in 1945 and ten months in 1946, admittedly erased and altered original entries on the cash book of the bakery so as to reduce by $300.00 per week the record of actual cash receipts from merchandise sales, which alterations, according to appellant's testimony, were made so that he could use the $300.00 weekly to make necessary purchases of bakery products on the "black market" from OPA violators. In addition to this direct testimony by his bookkeeper and appellant's admission as to these false understatements of cash receipts on the bakery books, there is much circumstantial evidence of unreported cash receipts from cash deposited by appellant during the tax years involved in bank accounts in the name of his wife and adopted daughter, from cash invested in United States Savings Bonds, and from purportedly non-taxable "loans" made to appellant's bakery by his wife during the prosecution years.[2]

Appellant in brief assigns twenty specifications of error, each of which has been carefully considered, but we think that only those hereinafter discussed require separate treatment.

(1) Sufficiency of the evidence. Appellant insists that language from the

2. According to the testimony of the revenue agents, Smith and Moorman, and certain chart summarizations prepared by the latter witness, appellant understated his cash receipts or sales on his bakery books and tax returns for the

recent decision of the Supreme Court in Holland v. United States, 348 U.S. 121, 125–129, 139, 75 S.Ct. 127, and from several decisions of this Court,[3] require direction of a judgment of his acquittal for insufficiency of the evidence to warrant the jury's finding of guilt beyond a reasonable doubt, particularly as to the element of willfulness essential to constitute this specific statutory offense; that the Government failed to eliminate in its computations, as available sources of funds for appellant's proven deposits, loans and purchases, amounts which had been accumulated by appellant and his wife in nonprosecution years, and failed directly to trace any unreported cash receipts into the bank accounts of either appellant, his wife or daughter, or to show that amounts entered upon his bakery books for merchandise purchases did not truly reflect deductible cash expenditures actually used for such purpose; finally, that the starting point for the revenue agents' net worth computations, under Bryan v. United States, 5 Cir., 175 F.2d 223, 227, was not established with the definiteness required to support a tax fraud conviction based upon wholly circumstantial proof. See Pollock v. United States, 5 Cir., 202 F.2d 281, 284.

It is not this Court's function to determine guilt or innocence. That judgment is exclusively for the jury, subject however to the decision of the district court reviewable by this Court as to whether the evidence is legally sufficient to sustain conviction, a matter, of course, presenting a question of law. Kotteakos v. United States, 328 U.S. 750, 763, 66 S.Ct. 1239, 90 L.Ed. 1557. In the performance of its function, the court has no right to invade the province of the jury by determining questions of credibility and weight of evidence. Goldman v. United States, 245 U.S. 474, 477, 38 S.Ct. 166, 62 L.Ed. 410; Stilson v. United States, 250 U.S. 583, 588, 40 S.Ct. 28, 63 L.Ed. 1154; Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; Mortensen v. United States, 322 U.S. 369, 374, 64 S.Ct. 1037, 88 L.Ed. 1331. "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, supra [315 U.S. 60, 62 S.Ct. 469]. In circumstantial evidence cases, this Court has said that the test to be applied is whether the jury might reasonably find that the evidence excludes every reasonable hypothesis except that of guilt. Vick v. United States, 5 Cir., 216 F.2d 228, 232, and cases there cited;

years involved in the total sum of $52,072.00, which aggregate understatement analyzed by years and disposition is as follows:

| | "1945 | 1946 | 1947 | Total |
|---|---|---|---|---|
| "Deposited In Personal Bank Accounts | | | | |
| Mrs. May W. Lloyd's Checking Account. | $ 4,408.00 | $ 550.00 | —0— | $ 4,958.00 |
| Mrs. May W. Lloyd's Savings Account. | —0— | 1,850.00 | —0— | 1,850.00 |
| Miss Mary Elizabeth Lloyd's Checking Account. | 4,389.00 | 8,365.00 | 3,910.00 | 16,664.00 |
| Total | $ 8,797.00 | 10,765.00 | 3,910.00 | 23,472.00 |
| 'Loaned' To Lloyd's Bakery By Mrs. May W. Lloyd | —0— | 6,587.00 | 6,713.00 | 13,300.00 |
| Invested In U. S. Savings Bonds | 8,512.50 | 6,787.50 | —0— | 15,300.00 |
| | $17,309.50 | 24,139.50 | 10,623.00 | 52,072.00" |

3. Demetree v. United States, 5 Cir., 207 F.2d 892, 894; Ford v. United States, 5 Cir., 210 F.2d 313, 315; Wardlaw v. United States, 5 Cir., 203 F.2d 884, 887; Jones v. United States, 5 Cir., 164 F.2d 398, 400.

see also United States v. Levy, 7 Cir., 138 F.2d 429, 430, 431.

■ We think a fair reading of this record impels the conclusion that a jury question as to appellant's guilt was presented, certainly under the prosecution's "specific item adjustments method" of proving unreported income by means of substantial understatements of cash receipts and overstatements of merchandise purchases and delivery expenses for the tax years involved. See Spies v. United States, 317 U.S. 492, 500, 63 S.Ct. 364, 87 L.Ed. 418; Bostwick v. United States, 5 Cir., 218 F.2d 790, 794. The specific willful intent and bad motive required for conviction under this statute is, of course, inherently unsusceptible of direct proof, but as in the Bostwick case, supra, might here have been inferred by the jury from appellant's conduct, if the jury believed from the testimony that he knowingly permitted the making of false book entries and alterations to conceal cash receipts, purposely inflated his operating expenses, and thereby depreciated his net taxable income by means of fictitious flour and sugar purchases, delivery expenses, etc. See United States v. Rosenblum, 7 Cir., 176 F.2d 321, 329–330. True, appellant correctly contends that "the intent to avoid detection of price ceiling violation is not the specific intent to evade income taxes," but by the same token, "if the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime." Spies v. United States, supra, 317 U.S. at page 499, 63 S.Ct. at page 368. That the appellant might conceivably have been found innocent had his explanations been believed by the jury is no tenable ground for attacking the submission of such cogent, prima facie proof. Cf. United States v. Fleischman, 339 U.S. 349, 360–361, 70 S.Ct. 739, 94 L.Ed. 906; Casey v. United States, 276 U.S. 413, 418, 48 S.Ct. 373, 72 L.Ed. 632.

■ Appellant's further reliance upon such authorities as this Court's Bryan case, supra, for the proposition that indefinite proof of initial net worth is sufficient to invalidate all subsequent computations of the revenue agents, is here misplaced, for essentially this is a "specific item adjustment" rather than a net worth tax fraud prosecution, though in support of its prima facie case based on that theory the Government introduced its net worth and circumstantial proof in anticipation of the defense that appellant had available assets at the inception of the prosecution years sufficient to account for his proven expenditures over and above reported income. The jury might plausibly have inferred that, if appellant and his wife had had available in 1942 the approximately $101,000.00 cash reserve it was shown they would have needed to explain appellant's subsequent excess expenditures over reported cash receipts and deposited funds, they would not have found it necessary to borrow several thousand dollars from various banks and pay interest upon such loans during this period. Cf. Barcott v. United States, 9 Cir., 169 F.2d 929. In any event, proof of guilt in such cases to a mathematical certainty is neither possible nor required. While we think a jury case was made for each of the three tax years, the sentence imposed would be justified if the evidence supported the jury's finding that appellant willfully attempted to evade a substantial part of his income tax during any one of the three tax years involved. See Holland v. United States, supra; Schuermann v. United States, 8 Cir., 174 F.2d 397, 399; United States v. Schenck, 2 Cir., 126 F.2d 702, 707; Norwitt v. United States, 9 Cir., 195 F.2d 127, 135; Pollock v. United States, 5 Cir., 202 F.2d 281, 284.

■ (2) The motion to suppress evidence. The appellant moved to suppress as illegally obtained evidence the 1946 Cash Receipts Book of Lloyd's Bakery and photostatic copies of pages there-

from.[4] The examination and investigation of appellant's income tax returns for the years 1942 to 1947, inclusive, was commenced by Agent Smith in May, 1947, as a "routine assignment—the usual examination without any suspicion of fraud." By March 9, 1948, fraud had been suspected, and Special Agent Potter from the Intelligence Unit was assigned to work with Agent Smith. Potter resigned in 1951 or 1952, and another Special Agent Moorman was assigned to complete the work with Agent Smith during 1953 and 1954. In such cases, where many of the facts are discovered on a routine investigation before fraud is suspected, it is not to be expected that a taxpayer will be formally warned at the beginning of an investigation, and informed of his constitutional rights. In any event, as we have several times held, such circumstances do not require the exclusion of the evidence, but may go to its weight or credibility. Montgomery v. United States, 5 Cir., 203 F. 2d 887, 893, and cases there cited; Vloutis v. United States, 5 Cir., 219 F.2d 782, 787; White v. United States, 5 Cir., 194 F.2d 215, 217.

▆ (3) Sequestering appellant's accountant witness and not sequestering the Government's accountant witness. In Bostwick v. United States, 5 Cir., 218 F.2d 790, 792, we refused to hold that the district court had abused its discretion in sequestering the defendant's accountant witness, and a like ruling is due here. We deem it appropriate to state, however, that, in our opinion, ordinarily and in the absence of unusual circumstances, the same treatment in this respect should be accorded to the Government and to the defendant.

▆ (4) Admission of testimony and records concerning financial circumstances of appellant's wife and daughter. Appellant filed both written and oral objections to the court's admission of testimony by the revenue agents, Smith and Moorman, relating to alleged unreported cash bakery receipts supposedly deposited by appellant during the prosecution years in bank accounts to the credit of his wife and daughter, the purchase of U. S. Savings Bonds in their names, admission of their bank and tax records, income and assets, etc. He insists there was no showing that he actually deposited such funds, if any, to their names, or that he had any such dominion or control over such funds as justified admission of such evidence of their separate and independent financial estates. The wife and daughter were members of appellant's household, and during the tax years in question were employees in his bakery. Appellant had given a statement to Government agents that his wife had no source of income except her salary at the bakery and interest on loans. We think that this evidence was competent for the purpose for which it was offered and admitted—to establish a justifiable inference for the jury that these excess funds and expenditures, not otherwise satisfactorily explained, were actually derived from unreported income taxable personally to the appellant. In view of the court's charge that "it is not up to the defendant to assume the burden of proving that the deposits in the bank accounts of his wife and daughter were not his income," no prejudice

4. In his motion to suppress, "Defendant states that the Government Agents in this case, when they first came to see him about his income tax matters, told him that it was a routine check-up and that they would let him know after the investigation how much taxes he owed. At no time was it intimated to him that there might be a criminal prosecution. Defendant was never warned and was never told by the said Agents that the evidence here sought to be suppressed would be used in either a civil or criminal prosecution against him. The defendant never consented to the said Agents getting possession of or removing from his place of business or photostating any pages contained in the said 1946 Cash Receipts Book of Lloyd Bakery. Defendant states that said Daily Cash Receipts Book was obtained by stealth by the said Government Agents and secretly removed from his place of business and photostated by the said Government Agents without his consent."

to appellant's rightful presumption of innocence or unfair shift of the burden of proof resulted from the admission of such testimony. Cf. Ford v. United States, 5 Cir., 210 F.2d 313, 316–317.

 (5) Testimony of the revenue agents claimed to be inadmissible as conclusions and hearsay. Appellant insists that certain testimony by the revenue agents, Smith and Moorman, contained a series of theoretical estimates and conclusions based on hearsay as to his unreported income and practically required him "to prove himself innocent by assuming the burden of overcoming the prejudicial effect of the mass of exhibits, estimates, conjectures, and conclusions which the government has been allowed to get into the record". See Demetree v. United States, 5 Cir., 207 F.2d 892, 894. The order in which both Smith and Moorman were permitted to express their conclusions did tend, we think, to impress the jury with the idea that the conclusionary figures were matters of original evidence rather than mere summaries of the calculations of the witnesses from evidentiary facts. For example, at the beginning of Smith's testimony he was permitted to state, over the appellant's objection, that for each of the three years he determined from his investigation that there was other taxable income in addition to that reported by the appellant, and to state the amount of the unreported income. He thereafter gave in some detail how those figures were arrived at, but we think the order of proof should have been reversed and his basic facts and figures first stated before his conclusions were expressed. Moorman went into detail as to the records which he had examined and other sources of his information, among other things stating that "I interviewed several witnesses myself." We think, however, that his subsequent testimony clearly revealed that his computations were not based on any such objectionable hearsay, but upon available facts and figures of record, the source of which was adequately disclosed. Again, Moorman, after describing the records and sources of his information, was permitted to testify, over the appellant's objection, to his determination of what he considered to be the appellant's correct income tax liability for each of the three tax years based upon his investigation. That kind of conclusion should not have been expressed until the facts and figures on which it was based had first been adequately proved and explained to the jury. Moorman's subsequent testimony was probably sufficient to sustain his conclusions, and we do not say that we would base a reversal on the erroneous admissions of his conclusionary statements when they were subsequently connected up. We do, however, express our disapproval of permitting this order of proof, especially in view of its tendency to divert the jury's attention from the original and basic evidentiary facts and to emphasize the conclusions of the witness when such conclusions were, in fact, mere summaries of his calculations from other facts.

 (6) Admission in evidence and revenue agents' use of charts. Appellant strenuously insists that the large scale charts summarizing the revenue agents' computations and admitted in evidence over his objection were offered and used before the jury as primary proof of his unreported tax liability, and that their use should here be condemned as prejudicial because the court permitted them to acquire "an existence of their own, independent of the evidence which gave rise to them." Holland v. United States, supra [348 U.S. 121, 75 S. Ct. 131]; see Elder v. United States, 5 Cir., 213 F.2d 876. We think the general rule is that the admission of such charts is discretionary with the trial court, and that its rulings thereon are subject to review only upon a clear showing of abuse and resulting prejudice to an accused. See United States v. Johnson, 319 U.S. 503, 519, 63 S.Ct. 1233, 87 L.Ed. 1546; Noell v. United States, 9 Cir., 183 F.2d 334, 339; United States v. Bramson, 2 Cir., 139 F.2d 598, 600; United States v. Weinbren, 2 Cir., 121

F.2d 826, 829; Somberg v. United States, 7 Cir., 71 F.2d 637, 640; United States v. Glazer, D.C., 110 F.Supp. 558; 4 Wigmore on Evidence, 3rd ed., Sec. 1230. While the Supreme Court's recent admonition in the Holland case, supra, should make trial courts mindful to guard against permitting any unrestricted acceptance and use by a jury of such charts as a substitute for primary and independent proof, practical problems inevitably encountered both by the Government and by the accused in presenting this too often confusing and complex tax fraud proof still justify the use of illustrative charts by both sides to summarize the varying computations, and make the primary and independent proof upon which such charts must be based more intelligible to the jury. See United States v. Schenck, supra, 126 F.2d at page 709; United States v. Park Avenue Pharmacy, 2 Cir., 56 F.2d 753, 756. The use of this type evidence, however, has inherent dangers to an accused, for a jury is often unfairly and unduly impressed by the apparent authenticity of a goverment witness' chart computations, as such, rather than by the truth and accuracy of the underlying facts and figures supporting them. A trial court is charged with grave responsibilities in such instance to insure that an accused is not unjustly convicted in a "trial by charts," however impressive the array produced. Ordinarily, it would be the better practice, not so carefully observed in this instance, to require that the source of the facts and figures upon which such a chart is based be fully disclosed before its admission into evidence. Whenever possible, such charts should be confined in their preparation to strictly mathematical computations, subject to detailed explanation upon the trial by the testimony of expert government witnesses, and they should not be encumbered by such impressive, conclusionary captions as "Overstatement of Merchandise Purchases", "Overstatement of Delivery Expenses", "Unreported Cash Receipts of Lloyd's Bakery", "Unreported and Undeposited Cash Re-

ceipts Invested in United States Savings Bonds", "Unreported Net Income of Mr. E. C. Lloyd", "Income Tax Unreported and Unpaid by Mr. Lloyd", such as were used on the Government charts here in dispute. While a prosecution witness may testify as to such conclusions from his mathematical computations, we think the danger in permitting the unrestricted use of such phrases upon charts results from a jury's natural tendency to accept such unsworn, conclusionary verbiage as authentic, primary proof, instead of purely in summarization and explanation of sworn testimony or authenticated documentary evidence.

Though we have felt it timely and appropriate thus to elaborate upon the Supreme Court's admonition to trial courts against permitting any unrestricted and indiscriminate use of such charts, in view of the broad discretion vested in the trial court in the admission of such evidence, we pretermit a decision as to whether that discretion was abused in this case and whether the appellant suffered such prejudice from the use of the charts as would justify a reversal, a reversal of this case being necessary in any event on account of the rulings next to be discussed.

(7) Evidence with respect to appellant's offer to compromise his tax liability for the years 1924 to 1932, inclusive. Over the appellant's objections, the Government was permitted to prove that the appellant submitted an offer of $750.00 to compromise an income tax liability amounting to $3,107.68, which he had incurred for the tax years 1924 to 1932, inclusive. The offer was rejected and the Government was permitted further to prove, over the appellant's objection, that an investigation followed in regard to suspected fraud and misrepresentation of facts in the filing of the offer in compromise; that the appellant had made a sworn statement that he borrowed the $750.00 from relatives and that he afterwards admitted that statement was untrue; and that certain other facts stated as to his assets and liabilities

were likewise untrue. The court first stated:

"Overrule the objection and will receive the evidence or permit it to be considered by the jury only as bearing on the possible source of funds which the evidence may disclose were in the possession of or received by the taxpayer Defendant for the years '45, '6 and '7."

A short time later, the court stated:

"That evidence is admitted, gentlemen of the jury, only for such light as it might shed in your deliberations on the issue of intent, which is one of the elements of the charge in this case. Your consideration is limited to that issue only."

The jury must have been confused as to the purpose for which they could properly consider such testimony. In our opinion, it was not admissible for either purpose. The earliest tax year investigated by the agents was 1942, ten years after 1932, the last year for which the settlement was offered, and eight years after 1934, the year in which the offer in compromise was made. Appellant's attorney very properly called to the attention of the court "the difference in the economy and values whatever they were in the years 1932, '3 and '4 against now, and suggest because of the vast difference in values and the economy it couldn't throw any light we could rely upon for the years '45, '6 and '7." A remark of the Supreme Court in United States v. Calderon, 348 U.S. 160, 164, 75 S.Ct. 186, 188, is pertinent here. "Proof that the taxpayer was impoverished by the depression, that he was working for his meals and $8 a week in 1935, is too remote absent proof of the taxpayer's financial circumstances in the intervening years."

■ The offer in compromise and testimony relating thereto were equally inadmissible to show intent. Evidence of other wrongful acts to prove intent must go further than showing that the defendant has a generally criminal disposition or character, and must logically tend to prove the defendant's criminal intent at the time of the commission of the act charged. The prior acts must be similar to the one charged and must not be so remote as to be lacking in evidentiary value. Excellent discussions of this subject are contained in the opinions of this Court in Weiss v. United States, 120 F.2d 472; on rehearing, 122 F.2d 675, 682–689; and in the opinion of the District of Columbia Circuit in Boyer v. United States, 76 U.S.App.D.C. 397, 132 F.2d 12, 13. See, also, Wolcher v. United States, 9 Cir., 200 F.2d 493, 497; Lambert v. United States, 5 Cir., 101 F.2d 960, 964; 2 Wigmore on Evidence, 3rd ed., Secs. 302 ff. In the Boyer case, supra [132 F.2d 13], the time elapsed between the two transactions was "nearly two years", and the earlier wrongful act was held inadmissible. In the present case, more than eight years had passed and there was no logical probative value as to the appellant's intent in the commission of the later act in addition to the general proof of his criminal tendencies.

■ It seems to us that the admission of such evidence was highly prejudicial to the appellant, since it indicated to the jury that he had cheated on his income taxes over a period of years theretofore and was further unworthy of belief because he had made misstatements in his offer of compromise. We are unwilling to say that without such inadmissible evidence the jury might not have reached a different verdict. See Kotteakos v. United States, supra, 328 U.S. at page 764, 66 S.Ct. 1239. The judgment is accordingly reversed and the cause remanded for a new trial.

Reversed and remanded.