**Mateo J. AZCONA, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 16965.**

United States Court of Appeals
Fifth Circuit.

June 30, 1958.

George J. Gulotta, Clem H. Sehrt, Virgil M. Wheeler, Jr., New Orleans, La., for appellant.

Prim B. Smith, Jr., Asst. U. S. Atty., New Orleans, La., M. Hepburn Many, U. S. Atty., New Orleans, La., for appellee.

Before RIVES, CAMERON and BROWN, Circuit Judges.

RIVES, Circuit Judge.

A jury returned a verdict of guilty on each count of a four-count indictment charging appellant-defendant with attempted income tax evasion[1] for the years 1951 to 1954, inclusive. The court adjudged him guilty and committed him to the custody of the Attorney General for imprisonment for a period of eighteen months.

During the four years covered by the indictment, the defendant was a captain of the New Orleans Police Department. On his tax returns he reported his salary but no other income. The government's theory is shown in the bill of particulars furnished to the defendant:

"1. The prosecution is based solely upon specific items of unreported income received by the defendant.

"2. The specific items of unreported income were received by defendant from an organized system of graft in the New Orleans Police Department.

"3. The specific items of unreported income were received at frequent intervals during the entire period covered by the indictment."

██ The district court denied the defendant's motion for further particulars, such as the source of each item of unreported income and the person or persons from whom the same was received. The main purpose of a bill of particulars is to "better apprise the defendant of what he is expected to meet,"[2] so that he may properly prepare his defense. A careful reading of the present record does not disclose that the defendant was ever taken by surprise, or that he needed further particulars in order to make adequate preparation for trial. Rule 7(f), Federal Rules of Criminal Procedure, 18 U.S. C.A., authorizing the court to direct the furnishing of a bill of particulars simply restates the previously existing practice addressed to the sound discretion of the trial court.[3] We cannot say that such discretion was abused in the present case.

Between the time of the Jencks decision[4] and the hearing on the defendant's motion for the production of statements of government witnesses, the statute now appearing as 18 U.S.C.A. § 3500 had been enacted. The government went beyond the requirements of that statute as to the statements of many of its witnesses, and, as to all, the district court's ruling was correct under the statute. While the constitutionality of the statute was questioned below, it is not so seriously argued on appeal as to merit consideration.

██ During the trial, government witnesses Malcolm Faber and Sam Goldman testified that they operated lotteries in 1951 and paid graft for the privilege of operating in the Fifth Police District of New Orleans. Faber testified that his payments were left at Comis-

1. 26 U.S.C.A. § 145(b), I.R.C.1939, and 26 U.S.C.A. § 7201, I.R.C.1954.

2. Pipkin v. United States, 5 Cir., 1957, 243 F.2d 491, 494.

3. Wong Tai v. United States, 1927, 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545;

Notes of Advisory Committee on Rules of Criminal Procedure; Reynolds v. United States, 5 Cir., 1955, 225 F.2d 123, 127.

4. Jencks v. United States, 1957, 353 U.S 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103.

key's oil station at the corner of Banks and Broad Streets, and Goldman testified that his were left at the G & G Bar on Tulane Avenue. The money was placed in bank envelopes marked with the initials of their companies and a "5" representing the Fifth District. At that time, according to the testimony of Clifford Reuther, then employed by the New Orleans Police Department, vendors of lottery companies, some from as many as three companies, were bringing graft money to him at the Fifth District Station which he turned over to the defendant, a captain of police assigned to that district. While the specific monies paid by Faber and Goldman were not traced through Reuther to the defendant, Faber and Goldman were paying substantial sums for the "privilege" of operating illegal lotteries, and continued in such operations. Under all of the circumstances, we think that the jury might reasonably infer that the monies from Faber and Goldman reached the defendant through Reuther. The case is thus distinguishable from Ford v. United States, 5 Cir., 1957, 210 F.2d 313, where there was no evidence that the illegal payments were known to or received by the defendant, the Chief of the Galveston Police Department. The court did not err in overruling the motion to strike the testimony of either of these witnesses.

■ Government witness Leavines testified that in September, 1953, he was a Sergeant in the New Orleans Police Department; that he went to see a Mr. Aaron Kohn, who, as Chief Investigator of a Special Citizen's Investigating Committee, was conducting an investigation into graft in the Police Department; that shortly thereafter the defendant arranged a meeting with him at the corner of Almonaster and Burgundy Streets; that the defendant "asked me if Mr. Kohn had asked me anything about him," and also handed him $90.00 which he divided among himself and four other sergeants. The district court did not err in overruling the motion to exclude Leavines' testimony. It was competent to show guilty knowledge on the part of the defendant and also the manner in which the graft system operated and the monies were distributed. While the testimony was not admissible for the purpose of inducing the jury to convict the defendant of income tax evasion simply because he was a grafter or briber,[5] the defendant could not, through the commission of other offenses, gain immunity from the use of evidence relevant and competent to proof of commission of the crime with which he was charged.

■ Government Exhibits 7, 8, and 6 were received in evidence over the defendant's objection. Each of these three exhibits or charts was prepared by U. S. Treasury Agent Nauborn L. Perry who did not testify, but was available in the court throughout the trial. They contained a summary of information taken from the voluminous beat roll books of the New Orleans Police Department. The beat roll books themselves were received in evidence without objection. Exhibit 7 had been checked with the beat roll books, compared and verified by the witness Clifford A. Reuther and was offered in connection with Reuther's testimony. Its contents were indicated by its caption:

"Chart Showing the Platoons That Azcona and Reuther Were Assigned To in the Fifth District on *each* Friday of each Month, during the Period Jan. 7 to Feb. 23, 1951, and from June 1, 1951 to * * * 1952, on which days Azcona received the money."

Exhibit 8 had been compared with the beat roll books by the witness Peter P. Ory, in connection with whose testimony it was introduced. It was captioned:

"Chart Showing the Platoons That Azcona and Ory Were Assigned To in the Second District on each Saturday of each Month, during

the Period Feb. 1, 1954 to Dec. 31, 1954 on which days Azcona received the Money."

Exhibit 6 had been verified by the witness P. J. Trosclair, Jr., in connection with whose testimony it was introduced. It was captioned:

"Chart Showing District Assignments of Mateo Azcona and Police Officer Witnesses For Years 1951 to 1954, Inclusive."

■ If these charts or exhibits had been confined strictly to information extracted from the beat roll books, themselves in evidence and available for inspection and comparison, their admissibility would have been clear. It is convenient and often necessary as a practical matter to use summaries of large masses of documents or books duly verified by a competent witness. Such use is proper when the primary evidence is made accessible to the opposing party and a reasonable opportunity afforded for its comparison and use upon cross-examination and otherwise. See the many cases collected and summarized in 4 Wigmore on Evidence, 3rd ed., § 1230. As said by the Supreme Court in Burton v. Driggs, 1873, 20 Wall. 125, 136, 22 L.Ed. 299:

"When it is necessary to prove the results of voluminous facts or of the examination of many books and papers, and the examination cannot be conveniently made in court, the results may be proved by the person who made the examination. Here the object was to prove, not that the books did, but that they did not show certain things. The results sought to be established were not affirmative, but negative. If such testimony be competent as to the former, a multo Fortiori must it be so to prove the latter."

The principle has been applied in many cases in this court.[6] In Lloyd v. United States, 5 Cir., 1955, 226 F.2d 9, 16, we

commented at some length upon some of the dangers to an accused inherent in the use of this type of evidence, and warned against encumbering the exhibits with "impressive, conclusionary captions."

■ The really close question in the present case arises from the use on the exhibits of such inferential or conclusionary statements as " * * * on which days Azcona received the money," "therefore, Ory believes Azcona or Healy got money," and "either Azcona or Sbisa got money." We have carefully scrutinized the evidence to determine whether such statements affected the substantial rights of the defendant. Rule 52(a), Federal Rules of Criminal Procedure. The statements did not refer to the testimony of any witness other than the one in connection with whose testimony the exhibit was introduced. In each instance, the witness' attention was directed to the conclusionary statement and he swore that it was true. Thus to lead a witness to the desired answer is certainly not good practice, but the trial court has a reasonable discretion to permit leading questions. One precaution suggested in Holland v. United States, 1954, 348 U.S. 121, 128, 75 S.Ct. 127, 99 L.Ed. 150, and Steele v. United States, 5 Cir., 1955, 222 F.2d 628, 630, was observed when the exhibits were not sent to the jury room. In summary, a careful reading and consideration of the entire record makes us conclude that the admission in evidence of Exhibits 7, 8, and 6, or of either of them, did not constitute reversible error.

While the evidence came from witnesses whose veracity was open to serious question, that is unavoidable if crimes of this kind are to be detected and punished. The credibility of the witnesses was a matter to be decided by the jury. The district court did not err in denying the defendant's motion for judgment of acquittal.

---

6. E. g., New Amsterdam Casualty Company v. W. D. Felder & Co., 5 Cir., 1954, 214 F.2d 825, 828; Steele v. United States, 5 Cir., 1955, 222 F.2d 628, 629; Lloyd v. United States, 5 Cir., 1955, 226 F.2d 9, 16.

It was necessary, under the theory on which the defendant was prosecuted, to comment on the evidence of the defendant's participation in a system of graft in the New Orleans Police Department. We find no error in the instructions of which the appellant complains, and no reversible error in the record. The judgment is therefore

Affirmed.