**F. L. McCLANAHAN, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 17640.**

United States Court of Appeals
Fifth Circuit.

Dec. 8, 1959.

Wentworth T. Durant, Robert J. Hobby, Dallas, Tex., Llewellyn A. Luce, Washington, D. C., for appellant.

William N. Hamilton, Asst. U. S. Atty., Dallas, Tex., W. B. West, III, U. S. Atty., Fort Worth, Tex., for appellee.

Before HUTCHESON, JONES and WISDOM, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant was charged in a one count indictment with attempting to evade and defeat a large part of the income tax due and owing by him and his wife for the fiscal year ended March 31, 1951, in violation of Sec. 145(b) Internal Revenue Code of 1939, Title 26 U.S.C. § 145(b). Found guilty by a jury and sentenced by the court, defendant has appealed.

The defendant filed a joint federal income tax return for himself and his wife, representing a gross income of $125,364, deductible expenses of $73,416.09, and a net taxable income of $51,947.91, upon which he paid a correct federal income tax of $19,476.78. The alleged unreported income of $77,424.22, charged in the indictment represented income from gambling, and his defense below was and here is: that he lost more than he won on wagers, sustaining a net loss on this score for the fiscal year ending March 31, 1951; [1] and that he was, therefore, not guilty of the offense charged. He, therefore, insists: that a verdict should have been directed in his favor; and, in the alternative, that, because of the commission of prejudicial errors, the judgment should be reversed and the cause remanded for a new trial.

■ It is admitted that under the law wagering losses, i. e. losses in excess of winnings, are not properly deductible. The special agent for the Internal Revenue Service, who made the examination of the tax return of the defendant for the fiscal year ended March 31, 1951, here involved, testified: that he had allowed the defendant wagering losses for that year but could not remember the amount he had allowed as losses. He further testified: that he did not allow the defendant any losses from racetracks or casinos at Las Vegas, and no effort was made by him or anyone else to determine whether the defendant went to Las Vegas to gamble or the amount of his losses there.

At the conclusion of the trial which, as stated in the government's brief, had as its object to make out "a specific item case" by showing that plaintiff had net gambling winnings which he had not reported, the defendant's motion for directed verdict was denied, and the case was sent to the jury on a general charge which was, in substance that if the defendant filed a tax return in which he did willfully and knowingly attempt to conceal the amount of his income and evade the payment of taxes thereon, then he should be found guilty. In connection therewith it was further charged: that the proof must satisfy the jury beyond a reasonable doubt that the defendant collected other sums of money than those reported and knowingly and willfully

---

[1] Admitting that he had made bets and had won approximately $50,000 on football games, had bet on races, and had gambled at the casinos at Las Vegas, Nevada, during the fiscal year, he testified: that he had lost over $100,000 in the casinos at Las Vegas and at the racetrack in California; that, when he filed his income tax return for the year in question, he believed that his losses from wagers exceeded his winnings; and that he had no intention in any way of defrauding the federal government. On his return for the year the defendant did not deduct any losses on wagers for that year.

failed to include them in the income tax report; that his failure or refusal to include such items was done with the intent of defeating in part the payment of the taxes due by him; and that this failure to mention such sums would amount to concealment within the law.

In respect to the paramount issue on the trial, whether the defendant had net gambling gains, that is gambling gains in excess of losses which he did not report, there was only this brief reference in the last paragraph of the charge:

"Gentlemen of the Jury: An income taxpayer is due to pay income tax on winnings that he may have from gambling, just as he must pay on any other source. However, if the gambler loses money, he may deduct the gambling losses from the gambling winnings, but he may not deduct his gambling losses from his legitimate income which he would have otherwise been required to pay on."

and to this charge the defendant took several exceptions. Among them was one to that portion of the charge which stated that if the defendant in this case collected other sums of money than those shown on his return and failed to include them, he would be concealing a portion of his income, the ground stated being: that this charge would require that a defendant who wins money at gambling, though he may lose four times as much, be found guilty merely for failure to show the gross winnings on his return; whereas a defendant could not be held to have understated his income unless it had been shown that his losses were less than his gambling winnings, and the fact that he failed to show these winnings in his return, if they were exceeded by his losses, could not constitute concealment or fraud or failure to report income.

The court, stating that the last paragraph of the charge was, he thought, a correct statement of the law, declined to take any action on the objection.

Thereafter, defendant's counsel, taking other exceptions to the charge and coming back to his attack on the charge as misleading in charging the jury in effect that defendant would be guilty for not reporting the football betting receipts, which the evidence showed he had not reported, even though he had losses in gambling which exceeded his winnings, the court said:

"The court will leave the charge as it stands. However, if you wish to offer that special charge, you may dictate it, and we will hear it and still put it in the record."

The jury then retired to consider its verdict, but, before a verdict was reached and apparently as the controlling factor in arriving at it, the jury received secret instructions from the court under these circumstances. It sent to the judge by the court crier a paper with this question written on it:

"Should the defendant have reported his gambling gains and losses on his income tax return, whether he won or lost?"

and the crier, asking the judge if he wished to call counsel, was advised that it wasn't necessary. Then, without bringing the jury into open court or giving the counsel or defendant an opportunity to be present, the judge answered the jury's question by writing on the same paper:

"Mandatory that report all gains, though he may have lost. In case of loss, he reports both."

The jury then returned its verdict: "We, the jury, find the defendant guilty", and the foreman, who had put the paper in his pocket, later advised Mr. Hamilton, the Assistant United States Attorney who had tried the case for the government, what the question and answer were.

The defendant moving for a new trial in which, among other errors assigned, was the error of the court in receiving and answering the inquiry from the jury without affording defendant and his counsel an opportunity to be present and protect the defendant's interest, there then ensued a colloquy between the court

and counsel, the substance of which is set out in the margin.[2]

Here, urging upon us that giving the secret instructions to the jury was fatally prejudicial error, appellant insists that, unless the judgment is to be reversed and here rendered for the error of not directing the verdict of acquittal, it must be, because of this egregious error, reversed for a new trial.

■ We cannot agree with appellant that he was entitled to a directed verdict of not guilty for the plain and simple reason that, though he did testify positively that he had gambling losses in excess of his gambling gains, the jury was not bound to believe his testimony, and that, unless it did, the admitted fact that he received gambling gains clearly would have supported a verdict finding him guilty.

■■ We think, however, that it is too clear for extended discussion that the complained of action of the court in receiving and answering the jury's questions was a denial of the defendant's trial rights and highly prejudicial to him, and that, for this error, the judgment must be reversed.

This is not merely because the jury was secretly instructed with the defendant and his counsel not allowed to be present, though this practice is never to be commended. It is because, in advising the jury as he did, the district judge, as the colloquy in note two shows, was laboring under a misunderstanding and misapprehension of the law, and this misunderstanding, which had already misled the jury enough to cause it to ask the question, was confirmed, crystalized and translated into positive action against the defendant by the judge's answer to the question. If the answer could possibly be construed as not requiring a verdict of guilty on the undisputed evidence, which was that the defendant admitted he had gambling gains and claimed he had offsetting gambling

2. *The Court:* "I will explain the court's attitude. The uniform practice of the court is to bring them into the courtroom and to call counsel that they may be present to have a chance to except to the charge, but where a simple question is sent to the court on a sheet of paper like the one I hold in my hand and there cannot be but one answer to it, there is nothing to be gained by sending for the lawyers and calling the jury in. Since there was but one answer to the question and since your client could not have been harmed by it, I saw no use sending for you."

*Mr. Durant:* "If the court please, I take complete issue with the court on that subject. I find nothing in the statute, nothing in the forms of the returns, themselves, and I can conceive of nothing in the law which requires an answer given by the court. The statute provides that gambling losses may be deducted only from gambling winnings.

"I don't have too much to do with the preparation of returns, but I confess I would not understand the mechanics of it, other than to say you compute the winnings and you take off the losses, if the answer is zero and all loss, you put nothing on the return. That is the law, as I understand it, and I believe the court is in error on that subject."

*The Court:* "If you win a million dollars and then later lose it, you may keep silent on that subject?"

*Mr. Durant:* "Yes, your Honor."

*The Court:* "I don't so understand the law."

*Mr. Hamilton:* "I think if your Honor will look at Sec. 51 of the '39 Code, he will find he is in error about that."

\* \* \* \* \*

*Mr. Durant:* "If the defendant believed that he lost less than what he won, and so believing deliberately concealed from his returns the amount of his net gains which he knew, and should have known, should have been reported, then he should be found guilty, but if the defendant believed that his loss exceeded his winnings, he was under no obligation, either to report it in his return, nor could he be found guilty in any way."

*The Court:* "I think you have made your point clear and you protect your record and if there is anything you have overlooked, we will help you get it in there and we will find out what the law is."

*Mr. Durant:* "I have made an offer of that also, in the record."

*The Court:* "Yes, and the court says the only reason was that there was not but one answer to the question, according to law, and it was perfectly harmless to you and your client."

losses but did not report either, it was certainly in its skeleton form calculated to suggest to the jury that the defendant was guilty, and, before answering the question, the defendant and his counsel should have been given an opportunity to clarify it so as to make sure beyond all doubt that this construction could not be given to it.

In view of the fact that for the error thus pointed out, the judgment must be reversed and the cause remanded for a new trial, and further and not inconsistent proceedings, we will not undertake to determine whether any of appellant's other assignments are, or are not, well taken, or to discuss them further than to say that we think it quite probable that whether error or not, few, if any, of them will be repeated on another trial.

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.