F. L. McCLANAHAN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18665.

United States Court of Appeals
Fifth Circuit.

July 7, 1961.

Rehearing Denied Aug. 10, 1961.

William P. Fonville, Alan D. Feld, Goldberg, Fonville, Gump & Strauss, Dallas, Tex., for appellant.

W. B. West, III, U. S. Atty., Fort Worth, Tex., William N. Hamilton, Asst. U. S. Atty., Dallas, Tex., Robert S. Travis, Asst. U. S. Atty., Fort Worth, Tex., for appellee.

Before TUTTLE, Chief Judge, and CAMERON and JONES, Circuit Judges.

TUTTLE, Chief Judge.

This is the second appeal from a conviction of appellant of the charge of wilfully attempting to evade and defeat a part of the income tax owing by him for the fiscal year ending March 31, 1951, in violation of Section 145(b), Internal Revenue Code of 1939, 26 U.S. C.A. § 145(b).

The first three grounds of appeal criticize parts of the trial court's charge to the jury; the next four attack the sufficiency of the evidence to warrant submission of the case to the jury and/or to sustain its verdict; two other grounds of appeal deal with the admission of evidence of an earlier omission of gambling income from appellant's income tax returns; the remaining three grounds are based on a criticism of parts of the oral argument of government counsel to the jury.

It was the government's contention, amply supported by proof, that the appellant had made gambling winnings of approximately $50,000, none of which was shown on his income tax return and which appellant had taken considerable effort to conceal.

Appellant, while conceding that he had such winnings, contended that he had suffered gambling losses of more than the amount of his winnings and that he was, therefore, under no duty to report the winnings. The government concedes that only the excess of gambling winnings over gambling losses represents taxable income. It does not concede, however, that there was no affirmative duty for the taxpayer to report his winnings as income and then claim his losses as deductions.

We dispose, first, of the grounds touching on the sufficiency of the evidence. In the first appearance of a case involving McClanahan's conviction for a 1951 income tax violation we held that the evidence was sufficient to sustain a verdict of guilt. McClanahan v. United States, 5 Cir., 272 F.2d 663. The affirmative evidence presented on the present trial made an equally strong case against the taxpayer. Appellant complains that the government did not pursue certain leads in an effort to substantiate his claim that he sustained large gambling losses at the racetracks and at a half dozen or so different gambling establishments at Las Vegas, Nevada. The simple answer to this contention is that the government was under no duty to run down these leads even if they had been specific enough to make such investigation feasible. The burden of showing the losses was on the defendant, once he admitted the existence of the winnings.

The appellant appears to draw from our earlier decision following his first conviction that there was no *duty* of appellant to *report* his gambling winnings unless they exceeded his losses. We find no basis for such view. This Court has long since held that gambling winnings of the type here involved are includable in gross income and that gambling losses, to the extent permitted by statute, are deductions, Humphrey v. Commissioner, 5 Cir., 162 F.2d 853. They are so denominated in Section 23

(h) of the 1939 Internal Revenue Code, 26 U.S.C.A. § 23(h). Under the requirements of the gross income tax section of the Code, Section 22, 26 U.S.C.A. § 22, therefore, there is a duty for a taxpayer to report his winnings. He may then, if he wishes to take advantage of the statutory provision, claim his gambling losses as deductions.[1] Thus, where it was conceded that there were unreported gambling winnings, the government was under no burden to prove that there were no unclaimed deductions in order to carry its burden of proof here.

We next consider the challenge to the court's jury charge. The criticism here is that the trial judge inadvertently used the word "apparent" when he intended to say "important" in a part of his charge. The transcript of the charge, as contained in the record, includes the following sentence: "In determining the guilt of the defendant the wilfullness of the act becomes apparent." At the conclusion of the court's charge the following colloquy occurred:

"Mr. Fonville: * * * In reading the charge the Court said, in determining the guilt of the defendant, as I understood it, 'The willfulness of the act becomes apparent', I either misunderstood the Court or the Court probably said 'apparent' instead of 'important.' Mine is in shorthand. I will try to find the part of the charge in which it appears.

"The Court: Is it in the requested charge?

"Mr. Fonville: No, it is in the main charge.

"The Court: Repeat it.

"Mr. Fonville: The sentence begins, 'In determining the guilt of the defendant'.

"The Court: All right.

"Mr. Fonville: It is not too far down in the charge, I would say about three or four pages.

"The Court: Yes, I have it, and it reads 'In determining the guilt of the defendant the willfulness of the act becomes important.'

"Mr. Fonville: As I got it the Court said 'apparent' rather than important.

"The Court: Well, it is written 'important', and I think I said it that way."

That is where the matter was left.

■ We agree with appellant that we must treat the matter on the assumption that the charge said "apparent" rather than "important." The United States does not take a contrary position. What it does say, though, and we think correctly, is that here there was no clear request by counsel that the court correct the charge. Counsel clearly left the court with the impression that he was satisfied with the judge's belief that he had used the right word. Counsel thus waived any criticism that might have been available to him if he had made it clear to the court that he disagreed with the judge's understanding.

Moreover, while the word "apparent" would not be correct in the challenged sentence, we think the subsequent parts of the charge adequately protected the accused. Appellant contends that the sentence, including the word "apparent," amounted to an expression by the court of its opinion that wilfulness had been proved. Assuming that contention to be correct, we do not think this would be prejudicial error. It has been frequently stated that a trial judge may express his opinion of the facts if it is made clear to the jury that they are the triers of the facts and that they are not bound by his opinion, Lott v. United States, 5 Cir., 230 F.2d 915, 918, certiorari denied, 351

---

1. The Court of Appeals for the First Circuit draws a distinction between a gambler who, like McClanahan, makes his winnings and suffers his losses in separate transactions and a "professional" gambler who handles bets for others. It expounds the same view as did this Court so far as concerns individual gamblers. See Winkler v. United States, 1 Cir., 230 F.2d 766.

U.S. 953, 76 S.Ct. 848, 100 L.Ed. 1477, rehearing denied 352 U.S. 860, 77 S.Ct. 25, 1 L.Ed.2d 70; Kansas City Star Co. v. United States, 8 Cir., 240 F.2d 643, 644, certiorari denied 354 U.S. 923, 77 S.Ct. 1381, 1 L.Ed.2d 1438.

Here the court repeatedly told the jury that before they could find a verdict of guilty they would have to find a wilful intent. The court also instructed the jury:

> "Another thing for you to bear in mind is that this charge should be taken as a whole and do not 'hang your hat' as it were, upon one point or peg without giving due consideration to all the evidence before you and all of the provisions of the charge. And if during the trial, or from this charge, you have gathered any impression as to how the Court feels about the case or the nature of the verdict that should be rendered, you will disregard that also, because the Court is the judge of the law only and you as jurors are judges of the facts."

■ We think no reversible error occurred for the inadvertent use of the word "apparent" by the court.

The next complaint about the charge is aimed at the following language:

> "So now, if you find from the evidence and believe beyond a reasonable doubt that the defendant did, about the time stated in the indictment, file a tax return, as alleged, in which he did willfully and knowingly attempt to conceal the amount of his income and evade the payment of taxes thereon for the fiscal year ended March 31, 1951, as required by law, then, in that event, you may find the defendant guilty.
>
> "In this case, if it appears that the defendant filed an income tax report setting forth a portion of his income, and if you find and believe from the evidence beyond a reasonable doubt that the defendant collected other sums of money and knowingly and willfully failed to include

the same in the income tax reported and that his failure or refusal to so include these items was done with the intent of defeating in part the payment of the taxes due by him to the government, this failure to mention such sums would amount to concealment within the law.

> "An income taxpayer is due to pay income tax on winnings that he may have from gambling just as on income from other sources. However, if in gambling he loses money he may deduct his gambling losses from his gambling winnings, but he may not deduct his gambling losses from the legitimate income on which he would otherwise pay tax."

Appellant's objection to this charge was:

> "Now, the defendant objects to that portion of the Court's charge wherein the Court instructs the jury in this case (if) it appears that the defendant filed an income tax return setting forth a portion of his income and if you find and believe from the evidence, beyond a reasonable doubt that the defendant collected other sums of money and willfully and knowingly failed to include same in his income report, for the reason that that is not a correct statement of the law, and you authorized the jury in this case to find the defendant guilty by reason of having collected some gambling winnings, even though the losses exceed the winnings, because the Court says if he collected the other sums of money and knowingly and willfully failed to include the same in the income report; for the further reason that the law does not require money collected to be included in an income tax report; it requires only items of income."

■ We think there is no merit in this contention. This charge correctly stated that the failure to report other sums collected would amount to concealment *if such failure was knowing and wilful and was done with the intent of defeating* in part the payment of the

taxes due by him. We have already discussed above the duty of the taxpayer to report his winnings as income. A knowing and wilful failure to report such income, with the intent of defeating the payment of the taxes, would amount to concealment just as charged by the court.

In this connection it should be noted that the earlier judgment of this Court reversing a previous conviction was based on an inadequate charge explaining that only the net gains of winnings over losses constitute taxable income, and particularly the Court felt that the appellant had been prejudiced by the rather cryptic answer the trial judge made, out of the presence of the defendant, to a written inquiry from the jury touching on this matter. It is clear from our opinion in the earlier case that we felt that such answer practically amounted to a direction of a verdict of guilty on the undisputed evidence that McClanahan had unreported gambling gains. 272 F. 2d 663, 666.

The appellant next complains of that part of the jury's charge which said:

"The jury will not concern itself or undertake to name the penalty in the event the defendant is found guilty. This duty or responsibility under the law devolves upon the judge. He will in the nature and course of events take into consideration the degree of wilfulness with which the act has been done. He will likewise take into consideration any and all mitigating circumstances connected with the transaction. He will consider the case both from the angles of justice and mercy. The only question for the jury is one of guilt or innocence."

We think that the above language given in the ordinary course of the judge's complete charge, and not in response to a special inquiry from the jury, would not be error. It was part of his statement that the jury was not to be concerned with the matter of punishment but that this was a matter for the judge to consider in the event of a verdict of guilty. The case is not like Demetree v. United States, 5 Cir., 207 F.2d 892. We think it more nearly resembles the situation discussed by the Sixth Circuit in Strauch v. United States, 6 Cir., 213 F.2d 805; vacated by the Supreme Court on a different ground, 348 U.S. 905, 75 S.Ct. 311, 99 L.Ed. 710. See also Dicks v. United States, 5 Cir., 253 F.2d 713, 714, and Erwin v. United States, 6 Cir., 242 F.2d 336, 337.

We come next to the contention that the court erred in admitting evidence, over counsel's objection, showing omission of gambling income "from a return for a year nine years prior to the year involved in the charge on which appellant was being tried."

The record discloses that the testimony complained of was that of a former internal revenue agent who was being questioned by the government as to his efforts to obtain from McClanahan records to substantiate his claimed gambling losses. After having testified at some length about his efforts to obtain such records, the witness testified, "I reminded Mr. McClanahan that as far back as 1942 and for every year up to the years I was investigating in that he had been asked by various special agents and revenue agents to produce his gambling records, and that he had produced none with the exception of a five day period in 1944. I asked him again for any records regarding the three years I was investigating."

Thereafter comes the testimony now objected to. The following colloquy took place:

"Q. Now, was there anything further said with reference to previous revenue agents with Mr. McClanahan—first—did he acknowledge that that was a fact? A. Yes, sir, he did.

"Q. Did you discuss deficiencies which he had settled for prior years on account of his gambling activities with him at this meeting? A. Yes, I mentioned that his income tax return—

"Mr. Fonville: I object to this testimony. I object to this witness going into previous years. The witness is talking about some tax payments that had been settled in prior years. It will have no materiality in this case and it is prejudicial.

"Mr. Hamilton: I think it is very material in this case. I think this witness has established that that very dispute was settled in this very year, and it has to do with the man's system, motive, and intent.

"The Court: How remote was the former offense?

"Mr. Hamilton: It was not settled until the year in this indictment and it covered the years 1942 through 1948.

"Mr. Fonville: And the Court understood from counsel that he was referring to an offense because the Court said, 'When was the offense?' There was no offense involved, according to the witness. The witness said he had made some adjustments and settlements.

"The Court: I used the word 'offense' when perhaps I might have said transaction or occurrence, is what I had reference to. I will let him answer.

(By Mr. Hamilton):

"Q. Did you discuss that with him? A. Yes.

"Q. Did you discuss with him the fact that that had just been settled in this year? A. Yes.

"Q. And what further discussion did you have with him along that line? A. Just the fact that his returns, or rather the investigation of his returns resulted in a settlement whereby some $50,000.00 additional gambling income was agreed on by both sides for the year 1942.

"Q. I will ask you whether or not you asked him what he did with his winnings during the period you were investigating? A. Yes, I did. He said that he put them in his lock box or else paid other gambling losses with them.

"The Court: Now, with reference to the lock box. Were you talking about that time or the former settlement in 1942, or about the funds that are now under consideration?

"The Witness: About the funds under consideration.

"The Court: The case now before us?

"The Witness: Yes, sir.

"The Court: Go ahead.

(By Mr. Hamilton)

"Q. What did he say he did with his money? A. He put it in the safety deposit box in the First National Bank in Dallas or paid losses with it.

"Q. Did he state whether or not he put it in his bank account? A. He did not put it there.

"Q. Did you ask him why he had not deposited this money? A. He said he had not deposited it because the Internal Revenue would charge his gambling winning up to him as income.

"Q. Was anything stated with reference to his prior deficiency in that regard, what it was based upon?

\* \* \* \* \* \*

"A. The additional taxes for the prior period was additional gambling income.

"Q. Do you know whether it was based on bank records or note? A. Yes, it was based on identified gambling winnings that were put in the bank less identified checks given for gambling."

 We think this is not similar to evidence tendered by the government to show a similar failure to report income in a remote prior year such as was the case in Lloyd v. United States, 5 Cir., 226 F.2d 9. Here the testimony was of a witness telling of conversations and statements between him and the accused. In effect he stated that in an effort to get McClanahan to furnish

him specific information or records touching on his claimed gambling losses, he reminded McClanahan that he had just been made to pay a $50,000 deficiency for an earlier year because of his failure to give adequate information. Furthermore, McClanahan's statement that for the year in question he did not deposit his gambling winnings in the bank "because the Internal Revenue would charge his gambling winning up to him as income," made it proper for the government to show, as it did in the last part of the testimony quoted above, that the additional assessment testified to had been arrived at by taking McClanahan's recorded bank deposits as proof of his winnings, giving him credit for "indentified checks given for gambling" as a deduction. McClanahan's statement that he had not deposited his gambling winnings during the year in question but had rather put the money in safety deposit boxes, was certainly admissible. It was equally relevant for the government to prove that in arriving at the deficiency McClanahan had given credit for provable losses. We think, in short, that the testimony of the witness as to his efforts to get McClanahan to disclose the facts concerning his gambling losses was admissible as throwing light on appellant's conduct, especially his failure to produce evidence convincing to the jury that he actually suffered substantial losses.

When McClanahan testified, he stated that the agents "wouldn't let me have any losses I had during those years,"[2] and that it was for this reason that he put his money in a lock box. It was certainly relevant for the government to show that credits were allowed for all "identified checks for gambling." Thus, even if the evidence had been inadmissible when given, no harm is shown because the government could clearly ex-

plain just how the deficiency was handled to rebut Mr. McClanahan's testimony.

 We do not think reversible error occurred in the failure of the trial court either to declare a mistrial, which was not requested, or in not granting a new trial because of the prosecuting attorney's statement during the course of the trial, "This is not the first time; this is his second time. He didn't get prosecuted before but he is being prosecuted now."

Counsel for appellant objected to this statement by saying, "I object to that argument as being unfounded upon the evidence in this case. There is nothing in this case that there is former offense." Whereupon, a government counsel stated, "I will stipulate that there was no former offense." The Court then said, "Yes, I think we told the jury that after an objection made during the trial, so the instruction still stands."

Counsel did not request the court to declare a mistrial nor did he request any further clarification of the matter at the time. While it would have undoubtedly been better not to have implied that the prior deficiency of $50,000, which we have discussed above, might have resulted in a prior prosecution, we do not think that the statement by counsel requires a reversal of the judgment of conviction in the absence of a motion for mistrial. We think it plain that the trial court made it clear to the jury that there had been no previous criminal offense charged against McClanahan.

 The final point raised by appellant is that a witness for the prosecution was permitted to testify that he had examined records in Chicago which were not introduced into evidence or available at the trial, and that he had found no other transactions than the ones that had

2. This came up on questions on his direct testimony:
"Q. Now, Mr. Baskett testified something about having a conversation with you and you said something about putting your money into a lockbox. Tell the Court and jury what you said to Mr.

Baskett in that respect. A. I had told him since the government had charged me income tax for the years 1942 through 1948 that I was now putting it in a lock box, I would keep my records, since they wouldn't let me have my losses I had during those years."

been admitted on stipulation. We think this point is without substance since a witness may clearly testify as to his failure to find the records after a search. This, in fact, is frequently the only way in which a negative fact can be proved. See Nichols v. United States, 5 Cir., 48 F.2d 46, 49, and Keith v. United States, 5 Cir., 250 F.2d 355, 356.

Finding no error, we conclude that the judgment must be Affirmed.

CAMERON, Circuit Judge.

I concur in the result.