T.C. Memo. 2007-359

UNITED STATES TAX COURT

ROBERT K. AND CHERYL HARDWICK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3189-06.                    Filed December 5, 2007.

     R disallowed a portion of Ps' claimed gambling
loss deduction for 2002, due to a lack of
substantiation, and determined a tax deficiency.

     <u>Held</u>:  R's tax deficiency determination is
sustained.


<u>Mark E. Hoffman</u>, for petitioners.

<u>Horace Crump</u>, for respondent.


          MEMORANDUM FINDINGS OF FACT AND OPINION

     WHERRY, <u>Judge</u>:  This case is before the Court on a petition

for a redetermination of a deficiency.  After concessions by

petitioners,[1] the issue for decision is whether petitioners are entitled to deduct gambling losses in excess of the $170,215 that respondent allowed for their 2002 taxable year.[2]

### FINDINGS OF FACT

Some of the facts have been stipulated by the parties. The stipulations, with accompanying exhibits, are incorporated herein by this reference. At the time the petition was filed, petitioners resided in Birmingham, Alabama.

Robert K. Hardwick (Mr. Hardwick) is president and part owner of Hardwick Company, Inc. (Hardwick Co.), which is a heavy steel fabricating company. Petitioners are recreational gamblers and began playing slot machines regularly in 1997. In 2002, they made at least eight trips to Mississippi to play slot machines at various casinos. Mr. Hardwick normally played the high stakes slots ($20 or $30 per pull).

Petitioners had a line of credit at the casinos they visited regularly in Tunica and Biloxi, Mississippi, of approximately

---

[1]Petitioners concede that the $12,400 they won in 2003 at the Pearl River Resort casino was not properly includable in their taxable income for taxable year 2002. Petitioners concede that the $26,500 that they won from the Beau Rivage Resorts, Inc., casino in 2002 was properly includable in their 2002 taxable income. Petitioners concede that the net increase in their taxable income for 2002 was $14,100.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

$30,000 to $35,000.  Petitioners would travel with $1,000 to $4,000 in cash on each of their gambling trips, which they would spend before they used markers against their lines of credit.

When petitioners had spent all of their cash, they would utilize markers, which are self-generated checks from the patron to the casino representing the patron's draws against a line of credit with the casino.  The marker is paid to the patron in either cash or casino chips.  Petitioners would obtain markers in $2,000 or $2,500 increments.  Approximately 40 to 45 days after obtaining a marker, the dollar amount of the marker would be debited from petitioners' Equity Line of Credit at Compass Bank of Decatur, Alabama (line of credit).  In 2002, $50,500 in markers was withdrawn from petitioners' line of credit.  However, that dollar amount does not include markers that petitioners paid off with gambling winnings or other available cash before they exited a casino.

Mr. Hardwick kept a log of petitioners' gambling winnings and losses during 2002 that consisted of one, lined yellow, piece of notebook paper containing his notations.[3]  The log also

---

[3]The log, which appears to contain some mathematical errors, including the last notation for 2001, which according to the Court's calculation should have been a $50,530 loss instead of a $50,580 loss, provides the following notations pertinent to 2002 (the Court has numbered the log entries by line as follows in the far left hand column for ease of reference):

(continued...)

includes gambling winnings and losses from 2001 and the beginning of 2003, as well as Mississippi and Louisiana State tax refunds for 2002. The log reflects Mr. Hardwick's personal record, prepared within 2 to 3 days of returning from each gambling trip, of the net amount petitioners won or lost over a given gambling weekend. The computations are based on his comparison of the amount of cash he remembered petitioners took to the casinos and the amount they returned home with, reduced by the dollar amount of any outstanding markers generated during the trip. According to Mr. Hardwick's running tally of petitioners' net gambling winnings and losses, petitioners had a net loss in the amount of $31,180 for 2002.[4]

---

[3](...continued)

| | | |
|---|---|---|
| [1] | | 2001 ($50,580) |
| [2] | +19000 | |
| [3] | <u>-18000</u> | |
| [4] | <u>-25000</u> | Feb 02 BILOXI FEB |
| [5] | 76480 | 74580 [both numbers are crossed out] |
| [6] | - 1100 | TUNICA APRIL |
| [7] | +14000 | BILOXI MAY (MEMORIAL DAY) |
| [8] | + 8800 | MS TAX REFUND [the number is crossed out] |
| [9] | <u>+ 2300</u> | LA TAX REFUND [the number is crossed out] |
| [10] | -50580 | 50080 [both numbers are crossed out] |
| [11] | + 500 | |
| [12] | <u>-26000</u> | JULY BILOX |
| [13] | <u>+40000</u> | LABOR DAY 2002 |
| [14] | -35580 | -20000 |
| [15] | <u>-35000</u> | |
| [16] | | 2002 ($31,180) |

[4]See <u>supra</u> note 3 log entry No. 16. Mr. Hardwick's total appears to be the result of mathematical errors. The Court
(continued...)

Notably, there was at least one occasion where Mr. Hardwick failed to include petitioners' gambling winnings in his log. Mr. Hardwick testified that he won $24,000 on Sunday, June 9, 2002, at the Grand Casino Tunica, yet his log does not include a notation for this win. Also, it appears that Mr. Hardwick may have carried over to the 2002 taxable year a net $50,580 gambling loss from 2001.[5] Taking into account this possible carryover, it appears, although the odds of winning on a casino's slot machines after a large number of plays is statistically improbable, that based on Mr. Hardwick's log, petitioners may have had net gambling winnings for 2002.[6]

---

[4](...continued) believes the numbers total $36,030 (based on a $50,530 loss for 2001 instead of the $50,580 as calculated by Mr. Hardwick). See supra note 3. The record does not explain how petitioner got from his apparent $35,580 total, shown as log entry No. 14, to ($31,180), the total for 2002 shown as log entry No. 16.

[5]The fourth notation for 2002 is "76480" and/or "74580" (log entry No. 5) which according to Mr. Hardwick's testimony is a "running total". Although there is no indication that the $76,480/$74,580 dollar amount is a net loss, it appears to be consistent with the rest of the document. According to Mr. Hardwick's notations, his yellow notebook log sheet reflects that petitioners had a net gambling loss of $50,580 for 2001 (see log entry No. 1). Taking into account petitioners' $19,000 winnings (log entry No. 2), $18,000 loss (log entry No. 3), and $25,000 loss in Feb. 2002 (log entry No. 4), the $76,480/$74,580 "running total" incorporates petitioners' $50,580 loss from 2001. The next "running total" listed is "-50580" and/or "50080" (log entry No. 10), which appears to be an approximate result after taking into consideration a $1,100 loss (log entry No. 6), winnings of $14,000 (log entry No. 7), and tax refunds of $8,800 and $2,300 (log entries No. 8 and No. 9).

[6]The Court notes that according to Mr. Hardwick's notations
(continued...)

Petitioners received win-loss statements from the Grand Casino Biloxi and the Grand Casino Tunica. A win-loss statement is generated from a Players' Club card, which is a magnetically encoded card that patrons of a casino may use when playing slot machines. The Players' Club card enables the casino to track a patron's gambling activities by date and time, slot machine winnings and losses, and may provide free "comped" room, drink, and food for "high rollers", or points that may be exchanged by the patron for food, drink, or merchandise. However, for at least two of petitioners' gambling trips, on March 2 and April 6 and 7, 2002, there are no win-loss statements for their Players' Club cards. In exchange for their patronage as established by using Players' Club cards, petitioners received free food in casinos, free rooms at the casino hotels, and free room service (except for gratuities).

The Grand Casino Biloxi win-loss statement for Mr. Hardwick reflects that he won $93,822, and lost $94,775, for a net loss of $953 for 2002. The Grand Casino Biloxi win-loss statement for Cheryl Hardwick (Mrs. Hardwick) reflects that she had no winnings

---

[6](...continued)
that relate specifically to gambling winnings and losses for 2002, it appears that petitioners may, after removing the $50,580 loss from 2001 (log entry No. 1), have had net gambling winnings of $3,400 [$19,000 (log entry No. 2) - $18,000 (log entry No. 3) - $25,000 (log entry No. 4) - $1,100 (log entry No. 6) + $14,000 (log entry No. 7) + $500 (log entry No. 11) - $26,000 (log entry No. 12) + $40,000 (log entry No. 13)], even without including any portion of the $24,000 jackpot from the Grand Casino Tunica on Sunday, June 9, 2002.

and had a net loss of $14,141 for 2002. The Grand Casino Tunica win-loss statement for Mr. Hardwick reflects that he won $21,320, and lost $6,420, for net winnings of $14,900 for 2002. Overall, the win-loss statements reflect that petitioners had a net loss of $194 for 2002 for gambling activity recorded by their Players' Club cards.

On their 2002 joint Form 1040, U.S. Individual Income Tax Return, which was prepared by petitioners' accountant, Ben Shillaci, petitioners reported total gambling winnings of $308,400. Petitioners now concede that their total gambling winnings for 2002 were actually $322,500. See supra note 1. Petitioners' gambling winnings consisted of $26,500 from the Beau Rivage Resort, Inc., $80,350 from the Grand Casino Tunica, and $215,650[7] from the Grand Casino Biloxi. In addition, petitioners had gambling winnings in excess of the amounts reported on Forms

---

[7]The parties stipulated that petitioners had gambling winnings of $215,650 from the Grand Casino Biloxi for 2002. However, the 2002 Form W-2G, Certain Gambling Winnings, issued by the Grand Casino Biloxi that was admitted into evidence as exhibit 11-R, reflects that petitioners had $200,250 in gambling winnings. It is possible that petitioners stipulated gambling winnings from the Grand Casino Biloxi in excess of the amount shown on the 2002 Form W-2G, and that the $215,650 stipulated amount includes multiple jackpot winnings that were less than $1,200 (and therefore not reflected on the Form W-2G).

The $322,500 amount that petitioners concede is the total amount of their gambling winnings for 2002 appears to be based on the stipulated $215,650 amount, and not on the $200,250 amount reflected on the Grand Casino Biloxi 2002 Form W-2G. It is possible that the $322,500 amount reflects the net increase of $14,100 in petitioners' gambling winnings over the $308,400 they reported on their 2002 joint Form 1040. See supra note 1.

W-2G issued by the casinos, as only jackpots in excess of $1,200 were reported on Forms W-2G in 2002.  Neither petitioners' tax records, nor petitioners, specifically recorded or otherwise accounted for petitioners' slot machine winnings below $1,200. Petitioners claimed gambling losses of $308,400 on their 2002 joint Federal income tax return, the exact amount of their reported gambling winnings.

The notice of deficiency was issued to petitioners on November 9, 2005, and reflected a deficiency of $58,945 for 2002. Respondent disallowed $138,185 of petitioners' claimed $308,400 gambling losses due to lack of substantiation.  Petitioners filed with this Court a timely petition, and a trial was held on November 3, 2006, in Birmingham, Alabama.[8]

OPINION

I.  Burden of Proof

Deductions are a matter of legislative grace, and the taxpayer must maintain adequate records to substantiate the amounts of any deductions or credits claimed.  Sec. 6001;

---

[8]At trial, and on brief, respondent objected to the expert testimony of petitioner's accountant as the proper procedure required by Rule 143(f) and the pretrial order were not followed, and to the admission into evidence of substantiation documents that were prepared by the accountant and Mr. Hardwick in anticipation of trial.  The Court sustained the objection and did not permit the accountant to testify as an expert, but allowed various numerical summary documents that Mr. Hardwick and his accountant had prepared to be introduced.

INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs.  As a general rule, the Commissioner's determination of a taxpayer's liability in the notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is improper.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, pursuant to section 7491(a)(1), the burden of proof on factual issues that affect the taxpayer's tax liability may be shifted to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such [factual] issue".  The burden will shift only if the taxpayer has, inter alia, complied with substantiation requirements pursuant to the Internal Revenue Code and "cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews".  Sec. 7491(a)(2).  Petitioners did not comply with the substantiation requirements, and failed to present credible evidence at trial.  Accordingly, the burden remains on petitioners.

## II.  Gambling

Gross income includes all income from whatever source derived, including gambling.  See sec. 61; McClanahan v. United States, 292 F.2d 630, 631-632 (5th Cir. 1961).  In the case of a taxpayer not engaged in the trade or business of gambling, gambling losses are allowable as an itemized deduction, but only

to the extent of gains from such transactions.  See sec. 165(d); McClanahan v. United States, supra at 632 n.1 (citing Winkler v. United States, 230 F.2d 766 (1st Cir. 1956)).

Taxpayers have the burden of showing that they are entitled to a gambling loss deduction.  Norgaard v. Commissioner, 939 F.2d 874, 878 (9th Cir. 1991), affg. in part, revg. in part on another ground T.C. Memo. 1989-390.  Generally, a claimed expense (other than those subjected to heightened scrutiny under section 274) may be deductible even where the taxpayer is unable to fully substantiate it, if there is an evidentiary basis for doing so. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985); Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  In these instances, the Court is permitted to make as close an approximation of the allowable expense as it can, bearing heavily against the taxpayer whose inexactitude is of his or her own making.  Cohan v. Commissioner, supra at 544.

Petitioners rely on Doffin v. Commissioner, T.C. Memo. 1991-114, in claiming that the Court should estimate their gambling losses pursuant to the rule of Cohan.  However, this Court has declined to apply the rule of Cohan to gambling loss deduction cases that differ factually from Doffin.  See Donovan v.

Commissioner, 359 F.2d 64 (1st Cir. 1966), affg. T.C. Memo. 1965-247; Stein v. Commissioner, 322 F.2d 78, 83 (5th Cir. 1963), affg. T.C. Memo. 1962-19; Schooler v. Commissioner, 68 T.C. 867, 871 (1977); Lutz v. Commissioner, T.C. Memo. 2002-89.

In Doffin, the taxpayer had pull tab winnings of $46,240 and $32,571 for 1986 and 1987, respectively. The taxpayer did not keep contemporaneous records of his daily winnings and losses and did not retain any losing tickets to substantiate his losses. The Commissioner allowed the taxpayer a deduction for gambling losses in the amount of $494 for 1986, which was based on the $2 per pull tab cost of the taxpayer's 247 winning pull tabs for that year. Pursuant to the rule of Cohan, the Court allowed the taxpayer to deduct additional losses of $39,000 and $26,000 for 1986 and 1987, respectively. The Court's approximation of the taxpayer's gambling losses pursuant to the rule of Cohan was based on the Court's finding that it was highly improbable that the taxpayer purchased only winning tickets, and that the taxpayer's lifestyle and financial position indicated no accessions to wealth commensurate with the amount of net gambling winnings determined by the Commissioner. The taxpayer lived in a mobile home, had little income and few assets, and even sold assets and borrowed money during the years at issue to support his gambling habit.

Unlike Doffin, this is not a case where the petitioners have few assets and no income apart from gambling. Mr. Hardwick is president and part owner of Hardwick Co. Petitioners reported $391,546 in taxable income for 2002 aside from their $308,400 reported gambling winnings.[9] Further, respondent has allowed petitioners a $170,215 deduction for gambling losses for 2002 based on their submitted records, which is far more generous than the $494 deduction the Commissioner allowed the taxpayer in Doffin. The Court notes that the losses reported by the casinos as recorded on petitioners' Players' Club cards total $115,336.

The records that petitioners presented at trial are incomplete. The win-loss statements issued by the Grand Casino Biloxi and the Grand Casino Tunica do not include at least two gambling trips that petitioners made to Mississippi on March 2 and April 6 and 7, 2002. Mr. Hardwick's log does not include at least one substantial win by petitioners in the amount of $24,000, and appears to carry over a net gambling loss from 2001 to 2002. See supra note 4. Additionally, the Forms W-2G issued by the casinos do not include winnings under $1,200, which winnings petitioners failed to keep track of and record on their own. Petitioners' line of credit statements reflect that $50,500 in markers was debited in 2002. However, the mere fact of

_____

[9]Petitioners reported total taxable income of $699,946 on their 2002 Federal income tax return, of which $308,400 was their reported gambling winnings.

borrowing, represented here by marker debit transactions, does not substantiate actual losses of those borrowed funds on gambling. Schooler v. Commissioner, supra at 870.

Overall, there does not appear to be a correlation between the win-loss statements, petitioners' Forms W-2G, Mr. Hardwick's log, and petitioners' bank account statements. Notably, the win-loss statements reflect that petitioners had gambling winnings totaling $115,142, while the Forms W-2G provide that petitioners had total gambling winnings of $322,500[10]. Petitioners have not accounted for the $207,358 difference in gambling winnings between the win-loss statements and Forms W-2G. At trial, Mr. Hardwick was unsure of petitioners' total dollar amount of gambling winnings or losses, explaining that he only kept track of their net amount won or lost.

Petitioners' bank account statements reflect that petitioners had large sums of money being deposited and withdrawn on a monthly basis, and there does not appear to be a correlation between petitioners' monthly bank account balance and any substantial gambling win or loss in 2002. For example, according to Mr. Hardwick's log, petitioners lost $25,000 in February 2002, yet their bank account balance increased by approximately $33,000 for the month of February. This might reflect the 30 to 45 day

---

[10]This amount is based on the parties' stipulations. See supra note 7.

float delay in covering markers, but there was no credible evidence explaining these discrepancies.

The record provides no satisfactory basis for estimating petitioners' gambling losses in excess of the $170,215 allowed by respondent. See Stein v. Commissioner, supra. There are too many omissions and discrepancies among the documents petitioners have presented as substantiation. Consequently, the Court will not apply the Cohan rule to estimate the amount of petitioners' gambling losses. Petitioners could have avoided this result by keeping complete records of their gambling activities or perhaps by simply using their Players' Club cards to track their slot machine play on each of their gambling trips.

The Court has considered all of petitioners' contentions, arguments, requests, and statements. To the extent not discussed herein, the Court concludes that they are meritless, moot, or irrelevant.

To reflect the foregoing,

Decision will be entered

under Rule 155.