T.C. Memo. 2009-306

UNITED STATES TAX COURT

GEORGE D. AND LILLIAN M. SHOLLENBERGER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5504-08.                    Filed December 28, 2009.

George D. and Lillian M. Shollenberger, pro se.

<u>Richard J. Hassebrock</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Respondent determined a $555 deficiency in
petitioners' 2005 Federal income tax.  The issue for decision is
whether petitioners had unreported gambling income in 2005 and,
if so, the amount thereof.[1]

_____

[1]Certain computational adjustments that follow from the
                                             (continued...)

Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) as in effect for the taxable year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

The parties have stipulated some facts, which we so find. When they petitioned the Court, petitioners resided in West Virginia. At all relevant times, petitioners have been retired.

During 2005 petitioners gambled recreationally at a Charles Town, West Virginia, casino. Before going to the casino they often would stop by their bank and withdraw some money for gambling.

On March 29, 2005, they withdrew $500 from their joint checking account to take to the casino. That day petitioner husband hit a $2,000 jackpot on a dollar slot machine play at the casino. Petitioners each took $200 out of the jackpot winnings for additional slot machine play. They left the casino that day with $1,600, which they deposited the next day in their joint checking account.

On their joint 2005 Form 1040A, U.S. Individual Income Tax Return, petitioners did not report any gambling winnings. They claimed a $10,000 standard deduction. By notice of deficiency,

---

[1](...continued)
resolution of this issue are not in controversy, and we do not address them.

respondent determined that petitioners had $2,000 of unreported income from gambling winnings.

OPINION

Gross income includes all income from whatever source derived, including gambling. Sec. 61(a); McClanahan v. United States, 292 F.2d 630, 631-632 (5th Cir. 1961). In the case of a taxpayer not engaged in the trade or business of gambling, gambling losses from "wagering transactions" are allowable as an itemized deduction but "only to the extent of the gains from such transactions." Sec. 165(d); see McClanahan v. United States, supra; Winkler v. United States, 230 F.2d 766 (1st Cir. 1956).

Respondent asserts that for purposes of applying section 165(d) to casual gamblers like petitioners, the correct analysis and methodology is set forth in Chief Counsel Advice 2008-011 (Dec. 5, 2008) (the Chief Counsel Advice), which states in part:

> A key question in interpreting §165(d) is the significance of the term "transactions." The statute refers to gains and losses in terms of wagering transactions. Some would contend that transaction means every single play in a game of chance or every wager made. Under that reading, a taxpayer would have to calculate the gain or loss on every transaction separately and treat every play or wager as a taxable event. The gambler would also have to trace and recompute the basis through all transactions to calculate the result of each play or wager. Courts considering that reading have found it unduly burdensome and unreasonable. See Green v. Commissioner, 66 T.C. 538 (1976); Szkircsak [sic] v. Commissioner, T.C. Memo. 1980-129. Moreover, the statute uses the plural term "transactions" implying that gain or loss may be calculated over a series of separate plays or wagers.

The better view is that a casual gambler, such as the taxpayer who plays the slot machines, recognizes a wagering gain or loss at the time she redeems her tokens. We think that the fluctuating wins and losses left in play are not accessions to wealth until the taxpayer redeems her tokens and can definitively calculate the amount above or below basis (the wager) realized. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). For example, a casual gambler who enters a casino with $100 and redeems his or her tokens for $300 after playing the slot machines has a wagering gain of $200 ($300-$100). This is true even though the taxpayer may have had $1,000 in winning spins and $700 in losing spins during the course of play. Likewise, a casual gambler who enters a casino with $100 and loses the entire amount after playing the slot machines has a wagering loss of $100, even though the casual gambler may have had winning spins of $1,000 and losing spins of $1,100 during the course of play. [Fn. ref. omitted.]

Applying this methodology, respondent concedes that if we find, as we have found, that on March 29, 2005, petitioners entered the casino with $500 and took home $1,600 of winnings, the amount of gambling income which petitioners should have reported on their 2005 return was $1,100 ($2,000 jackpot winnings less $500 brought to the casino for gambling and less $400 taken from the jackpot for additional gambling) rather than $2,000 as determined in the notice of deficiency.

Although petitioners have stated that they "agree with" the Chief Counsel Advice, they nevertheless maintain, contrary to the Chief Counsel Advice, that they should be allowed to offset their March 29, 2005, net winnings with $2,264 of gambling losses they claim to have incurred throughout 2005. They contend that this

result is necessary to treat "regular and casual gamblers equally".[2]

The Code mandates, however, that casual gamblers be treated differently from taxpayers who are in the trade or business of gambling. In particular, gambling losses incurred in a trade or business of gambling are allowable in computing adjusted gross income pursuant to section 62(a)(1). Gambling losses incurred other than in the trade or business of gambling are allowable, if at all, as itemized deductions in calculating taxable income. See sec. 63(a), (d); Johnston v. Commissioner, 25 T.C. 106, 108 (1955); Cromley v. Commissioner, T.C. Memo. 2008-176; Heidelberg v. Commissioner, T.C. Memo. 1977-133.

Because petitioners were not engaged in the trade or business of gambling, their gambling losses are allowable only as itemized deductions. But because petitioners have elected the standard deduction, they are not entitled to itemize their deductions.[3] Sec. 63(b), (e); see Johnston v. Commissioner, supra; Heidelberg v. Commissioner, supra. We reject as without merit petitioners' contention that this statutory arrangement is

---

[2]By "regular" gamblers, we understand petitioners to mean gamblers who are in the trade or business of gambling.

[3]A taxpayer may change an election to claim the standard deduction at any time before the period of limitations has expired. Sec. 63(e). Insofar as the record shows, petitioners have not sought to change their election to claim the standard deduction. In any event, on the record before us it would not appear advantageous for petitioners to do so.

unconstitutional. See <u>Tschetschot v. Commissioner</u>, T.C. Memo. 2007-38 (upholding constitutionality of section 165(d)); <u>Valenti v. Commissioner</u>, T.C. Memo. 1994-483 (same); cf. <u>Gajewski v. Commissioner</u>, 84 T.C. 980 (1985) (holding that for purposes of computing the minimum tax the 16th Amendment does not require that a casual gambler's gambling losses be netted against gambling gains).

Drawing an analogy to the recovery of a capital investment, this Court has held that a casual gambler's gross income from a wagering transaction should be calculated by subtracting the bets placed to produce the winnings, not as a deduction in calculating adjusted gross income or taxable income but as a preliminary computation in determining gross income. See <u>Lutz v. Commissioner</u>, T.C. Memo. 2002-89 (slot machine winnings); <u>Hochman v. Commissioner</u>, T.C. Memo. 1986-24 (horse race winnings). This Court has also recognized the practical difficulties of tracking the basis of each wager individually in a session of like play. See <u>Green v. Commissioner</u>, 66 T.C. 538, 548 (1976) (stating that a "tabulation of the amounts paid for chips less the amount paid to redeem chips would have served to verify the net win or loss figures"); <u>Szkircsak v. Commissioner</u>, T.C. Memo. 1980-129 (stating that "it is impractical to record each separate roll of the dice or spin of the wheel"). The methodology put forward by respondent is consistent with these principles.

Insofar as petitioners mean to suggest that section 165(d) permits their gross income from slot machine play to be calculated by netting all their 2005 slot machine gains and losses, we disagree.  Section 165(d) does not define gross income but instead limits the deductibility of losses on wagering "transactions" to the amount of gains from wagering "transactions".  Consistent with general principles treating each wager as a separate taxable event under Federal tax law, see Abeid v. Commissioner, 122 T.C. 404, 411 (2004), section 165(d) clearly contemplates that gross income from wagering is determined in the first instance by reference to individual wagering "transactions."  To permit a casual gambler to net all wagering gains or losses throughout the year would intrude upon, if not defeat or render superfluous, the careful statutory arrangement that allows deduction of casual gambling losses, if at all, only as itemized deductions, subject to the limitations of section 165(d).

Respondent has effectively conceded that petitioners' gross income from their March 29, 2005, slot machine play was $1,100. Cf. LaPlante v. Commissioner, T.C. Memo. 2009-226 (holding that taxpayers failed to substantiate claims of net gambling gains and losses).  Giving effect to this concession, we hold that petitioners had $1,100 of unreported gross income from gambling in 2005 and are entitled to no deduction for gambling losses.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.
