T.C. Summary Opinion 2010-67

UNITED STATES TAX COURT

HONG ZHU, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1700-09S.                    Filed June 1, 2010.

Hong Zhu, pro se.

<u>Jonathan Kalinski</u>, for respondent.

LARO, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision

---

[1]Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code, and Rule references are to the Tax Court Rules of Practice and Procedure. Some dollar amounts are rounded.

to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined an $8,251 deficiency in petitioner's 2006 Federal income tax due to disallowed gambling losses. Respondent also determined a $1,650 accuracy-related penalty under section 6662(a). Respondent included those determinations in a notice of deficiency issued to petitioner on October 20, 2008. Respondent later asserted an increased deficiency of $103,221 and an additional accuracy-related penalty of $20,644.20, due to $332,995 in unreported proceeds received from the sale of stock. The parties now agree that petitioner had a $327,539 basis in that stock and that petitioner did not report the resulting short-term capital gain of $5,456 ($332,995 - $327,539).

The issues for decision are: (1) Whether petitioner may deduct her claimed gambling losses to the extent of her gambling winnings, (2) whether petitioner is liable for an accuracy-related penalty on overstated gambling losses, and (3) whether petitioner is liable for an accuracy-related penalty on her $5,456 unreported capital gain.

## Background

The parties' stipulation of facts and the accompanying exhibits are incorporated herein by this reference. We find the

stipulated facts accordingly.  When the petition was filed, petitioner resided in California.

During 2006, petitioner earned $9,220 in wages working part time at a restaurant.  She also reported for that year $56,434 in gambling winnings, for which she received a total of 14 Forms W-2G, Certain Gambling Winnings, from Mirage Resort & Casino (Mirage) and Pechanga Resort & Casino (Pechanga).  The payor and the winnings shown on each of these Forms W-2G are as follows:

| Payor | Winnings | Total |
|-------|----------|-------|
| Pechanga | $2,500 | |
| Pechanga | 2,500 | |
| Pechanga | 1,700 | |
| Pechanga | 4,000 | |
| Pechanga | 2,000 | |
| Pechanga | 10,034 | |
| Pechanga | 10,000 | |
| Pechanga | 10,000 | |
| Pechanga | 4,000 | |
| Pechanga | 3,000 | |
| Pechanga | 2,500 | $52,234 |
| Mirage | 1,500 | |
| Mirage | 1,500 | |
| Mirage | 1,200 | 4,200 |
| | | 56,434 |

Petitioner reported $56,434 in gambling losses on her 2006 Schedule A, Itemized Deductions.

Petitioner gambled for fun.  She went to Mirage once or twice, and she went to Pechanga an undetermined number of times.

She also gambled at a third location, the Bicycle Casino.[2]  She typically went to a casino with approximately $500, and she bet that money and continued to gamble with her winnings until she lost all of her gambling money or left the casino for the day. Petitioner estimates that her net loss from gambling was approximately $2,000 or $3,000 in 2006.

Petitioner played at the casinos blackjack, mini baccarat, pai gow poker, roulette, or slot machines.  She gambled predominantly at the slot machines and regularly bet $100 or more.  Petitioner used a card issued by Pechanga each time she gambled there.  The card tracked her wins and losses, and at the end of the day, she cashed out the tokens and tickets she received as winnings during the day.  The casinos issued a Form W-2G to petitioner when her winnings exceeded $1,200, and she did not receive any such form when her winnings were under $1,200. Three of the Forms W-2G that petitioner received from Pechanga for 2006 reported respectively that she won $10,000, $10,000, and $10,034 gambling at the slot machines.  When Pechanga gave petitioner the proceeds underlying those amounts, petitioner used those proceeds to continue gambling at the slot machines until she eventually lost all of those proceeds.

---

[2]At trial, petitioner could not recall the number of visits she made to the various casinos.  She sometimes received several Forms W-2G for a single visit, so the number of forms does not correspond to the number of visits.

On or about January 28, 2007, Pechanga mailed to petitioner a statement of her estimated wins and losses for 2006. The statement informed petitioner: "Your personal records are the best source data for justification of gaming win (loss) for IRS reporting purposes. This data is un-audited and should be used only for information purposes." The statement further advised petitioner: "Your estimated record of Cash In, Cash Out and Actual Win (Loss) for calendar year 2006 is noted" as such:

| Total Cash In | Total Cash Out | Win (Loss) | Game Type |
|---|---|---|---|
| $2,100 | $300 | ($1,800) | BJ |
| 3,600 | -0- | (3,600) | MB |
| 32,102 | 18,600 | (13,502) | PGK |
| 22,630 | 29,850 | 7,220 | PIT |
| 127,023 | 89,527 | [1]7,713 | SLOT |

[1]We note that $7,713 does not equal $89,527 less $127,023. In the case of the slot machines, the "Total Cash In" reflects the total amount of cash that petitioner put into the machines, and the "Total Cash Out" reflects the total amount of cash that petitioner received from the machines. We infer (and find) that the $127,023 includes $45,209 of petitioner's winnings that she reinvested into future plays rather than took out of the machine, so that her "Total Cash In" was actually $81,814 ($127,023 – $45,209 = $81,814). After taking this finding into account, the "Total Cash Out" of $89,527 less the "Total Cash In of $81,814" equals the reported "Win" of $7,713 ($89,527 – $81,814 = $7,713).

Petitioner received 21 Forms 1099-B, Proceeds From Broker and Barter Exchange Transactions, documenting the $332,995 that she received on the sale of her stock. Petitioner offers no explanation for not reporting these proceeds on her Federal income tax return.

Discussion

I.  Gambling Losses

Gross income includes all income from whatever source derived, including gambling winnings.  Sec. 61; McClanahan v. United States, 292 F.2d 630, 631-632 (5th Cir. 1961). Taxpayers may deduct their gambling losses but only to the extent of their gambling winnings.  Sec. 165(d).

The burden of proof is generally on an individual taxpayer to prove he or she is entitled to a specific income tax deduction, such as a gambling loss; this burden may shift to the Commissioner if certain statutory requirements are met and the taxpayer introduces credible evidence.  Sec. 7491(a).  We need not decide whether section 7491(a) applies to this case because we decide the parties' gambling loss dispute on the basis of the record at hand.

Where, as here, the record provides sufficient evidence that a taxpayer has incurred gambling losses, but the taxpayer is unable to substantiate the precise amount of those losses, the Court may estimate the amount of the losses and allow a deduction to that extent.  See Drews v. Commissioner, 25 T.C. 1354, 1355 (1956) (citing Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930)). Although the record in this case is limited, we are

persuaded that petitioner incurred gambling losses connected with her gambling winnings. While the record does not allow us to pinpoint the amounts of those losses, we believe it appropriate under the facts herein to measure petitioner's losses by using the statement that Pechanga issued to her. The fact that the statement advises petitioner that it may not be accurate does not lessen its probative value under the facts herein, given petitioner's testimony that she used the card each time she gambled at Pechanga.

Adding the total wins and losses from the statement, we find that petitioner's total net gambling loss at Pechanga was $3,969 in 2006 (($1,800) + ($3,600) + ($13,502) + $7,220 + $7,713 = ($3,969)). Accordingly, we hold that petitioner may deduct $52,234 of her gambling losses at Pechanga; i.e., her losses to the extent of her gambling income there. Petitioner has submitted no documentary evidence, nor offered any helpful testimony, regarding her losses from Mirage. We find that she did not sufficiently substantiate any losses from Mirage. The three Forms W-2G issued by Mirage show a total of $4,200 in gambling winnings. We hold that petitioner may deduct her remaining $3,969 in gambling losses at Pechanga on account of the $4,200 in gains at the Mirage. In sum, we hold that

petitioner may deduct (as an itemized deduction) gambling losses totaling $56,203 ($52,234 + $3,969).

II.  Accuracy-Related Penalty on Overstated Gambling Losses

Section 6662(a) and (b)(1) imposes an accuracy-related penalty equal to 20 percent of the portion of an underpayment of tax attributable to a taxpayer's negligence or disregard of rules or regulations.  Respondent bears the burden of production with respect to the applicability of that accuracy-related penalty included in the notice of deficiency and must produce sufficient evidence that it is appropriate to impose the penalty.  See sec. 7491(c); see also Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once respondent meets this burden, the burden of proof falls upon petitioner, who may carry her burden by proving she was not negligent and did not act carelessly, recklessly, or in intentional disregard of rules or regulations.  See Higbee v. Commissioner, supra at 447; see also sec. 6662(c).  Alternatively, petitioner may establish that the underpayment was attributable to reasonable cause and that she acted in good faith.  See sec. 6664(c)(1).

The term "negligence" includes any failure to make a reasonable attempt to comply with the internal revenue laws, and the term "disregard" includes any careless, reckless, or intentional disregard.  See sec. 6662(c).

Negligence connotes a lack of due care or failure to do what a reasonable and prudent person would do under the circumstances. See Neely v. Commissioner, 85 T.C. 934, 947 (1985). Negligence includes a failure to maintain books and records. We find respondent has met his burden of production in that the record establishes that petitioner overstated her gambling losses and had no documentation to support deducting a gambling loss greater than that shown on the Pechanga statement. See sec. 1.6662-3(b)(1), Income Tax Regs. Petitioner's sole argument for this lack of documentation is that she gambled only for fun. We consider this argument unavailing, and we sustain respondent's imposition of the accuracy-related penalty as to petitioner's overstated gambling losses.

III. Accuracy-Related Penalty on Unreported Capital Gain

Respondent asserts in his amended answer that petitioner is liable for an accuracy-related penalty under section 6662(a) on her $5,456 unreported capital gain. Respondent bears the burden of proof with respect to this assertion. See Rule 142(a).

Respondent has produced 21 Forms 1099-B, as well as brokerage statements, indicating that petitioner made 21 trades during 2006 that were not reported on her Federal income tax return. The regulations state that "Negligence

is strongly indicated where--(i) A taxpayer fails to include on an income tax return an amount of income shown on an information return, as defined in section 6724(d)(1)". Sec. 1.6662-3(b)(1), Income Tax Regs. "Information return" under section 6724(d)(1) is defined to include returns of brokers under section 6045. Sec. 6724(d)(1)(B)(iii). Petitioner received the 21 information returns and offers no substantial reason for not reporting the stock sales shown thereon. We hold that petitioner is liable for the accuracy-related penalty on the unreported capital gain.

IV. <u>Epilogue</u>

We have considered all arguments made by the parties and, to the extent not discussed above, conclude they are without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.